UNDERHILL v SAFECO INSURANCE COMPANY

PORTER v MICHIGAN MUTUAL LIABILITY COMPANY

Docket Nos. 58567, 60967. Argued May 30, 1979 (Calendar Nos. 8, 9).
—Decided October 29, 1979.

Randy C. Underhill was injured when the motorcycle he was operating collided with an automobile, and he brought an action to recover no-fault insurance benefits from Safeco Insurance Company, the insurer of the automobile. The plaintiff lived alone, and did not own an automobile; his motorcycle was insured for public liability but was not insured for no-fault benefits. The Washtenaw Circuit Court, Patrick J. Conlin, J., granted summary judgment for the plaintiff. The Court of Appeals, D. E. Holbrook, P.J., and Bronson and D. C. Riley, JJ., affirmed in a per curiam opinion (Docket No. 25868). Defendant Safeco Insurance Company appeals, and argues that a statutory scheme which permits motorcyclists to recover no-fault benefits without requiring them to purchase no-fault insurance violates the Equal Protection and Due Process Clauses.

Phillip Porter was injured when his motorcycle was struck by an automobile, and he brought an action to recover no-fault insurance benefits from Michigan Mutual Liability Company, the insurer of an automobile owned by his father, or from Aetna Life and Casualty Company, the insurer of the automobile which struck him. Porter lived with his father, and the father's no-fault insurance policy provided for a $5,000 deductible where the injury arose out of the use of an owned motorcycle by the named insured or a relative. The plaintiff argued that the $5,000 deductible in the Michigan Mutual policy violates the no-fault insurance act, that the statutory delegation to the Insurance Commissioner of authority to approve such deducti-

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] New Topic Service, No Fault Insurance §§ 17, 18.
[2] New Topic Service, No Fault Insurance § 12 *et seq.*
    Validity and construction of "no-fault" automobile insurance plans.
    42 ALR3d 229.
[3, 7] New Topic Service, No Fault Insurance § 8.
[4] New Topic Service, No Fault Insurance § 23.
[6] New Topic Service, No Fault Insurance §§ 2, 17.

bles was not made with the constitutionally required standards, and that the deductible violated the Equal Protection and Due Process Clauses. The Berrien Circuit Court, Julian E. Hughes, J., granted a partial summary judgment for defendants Michigan Mutual and Aetna. The plaintiff's claims against Aetna and the driver of the automobile were settled and dismissed by stipulation of the parties, and the plaintiff appealed the summary judgment as to Michigan Mutual. The Court of Appeals, T. M. Burns and Keyes, JJ. (Danhof, C.J., dissenting), reversed and remanded for a determination of the amount of no-fault benefits to which the plaintiff is entitled (Docket No. 30472). Defendant Michigan Mutual Liability Company appeals on the issue of the validity of the $5,000 deductible but concedes, on appeal, that motorcyclists are entitled to no-fault benefits when they are injured in accidents involving motor vehicles, and that the no-fault insurance issued to the motorcyclist, or to members of his family domiciled in the same household, is made primary by the no-fault act. Shelby Mutual Insurance Company, as amicus curiae, argues that the insurer covering the motor vehicle involved should be the primary insurer in all cases where the claimant was not an occupant of a motor vehicle. *Held:*

1. Motorcyclists, like all others suffering bodily injury as the result of an accident involving a motor vehicle, are entitled to no-fault personal protection insurance benefits. A motorcyclist is not among those whom the Legislature has excluded from benefits; he is among those covered by the "while not an occupant" language of the act. It would not be consistent with the structure of the no-fault act, designed to provide no-fault benefits to the populace at large for loss suffered as the result of an accident involving a motor vehicle, to infer a legislative purpose, inconsistent with the language of the act, to exclude motorcyclists from its protection. The act may not be construed as excluding the motorcyclist from its coverage for all purposes merely because motorcycles are excluded from the statutory definition of motor vehicle.

2. The statute requires a motorcycle owner to maintain security for liability to third parties, which likens him to the automobile owner, but groups him with pedestrians and bicyclists in defining his obligations and entitlements under the no-fault act. He is not required to purchase no-fault insurance, but he may claim no-fault benefits when he is injured in an accident involving a motor vehicle. It is argued that this system benefits motorcyclists at motor vehicle owners' expense, because motorcycles are, in fact, motor vehicles, and there is no

rational reason for treating them as a class different from other motor vehicles. It has already been held that the Legislature could constitutionally relieve motorcycle owners of the obligation to purchase no-fault insurance for themselves and others involved in accidents with them. The question now is whether motorcyclists can rationally be included among those who may claim no-fault benefits under the act.

3. Although they are generically motor vehicles, motorcycles are sufficiently distinct from automobiles to be constitutionally singled out for distinct treatment. The same factors which support a legislative decision to exempt motorcycle owners from the obligation to maintain no-fault insurance coverage, thereby treating them differently from other motor vehicle owners, provide an adequate rationale for the decision to permit motorcyclists, like bicyclists and pedestrians, to claim benefits when injured in accidents involving motor vehicles: 1) The motorcycle-motor vehicle accident is much like the bicycle-motor vehicle accident. Motorcycles do comparatively little damage to motor vehicles and their operators. Motorcyclists are likely to suffer substantial injuries in accidents involving motor vehicles. 2) The record in *Shavers* indicates that motorcyclists are rarely at fault in motor vehicle accidents. The Legislature could rationally conclude that motorcyclists, like bicyclists, should receive no-fault benefits for injuries sustained in accidents involving motor vehicles although they do not maintain no-fault insurance.

4. The Legislature intended that an injured person who is insured or whose family member is insured for no-fault benefits would have primary resort to his own insurer. Since his own insurer would be primarily responsible, there would be an incentive for the insurer to deal promptly and fairly with the customer. Additionally, making the owner's or family member's insurer primary may reduce the cost of insurance by facilitating the use of deductibles to avoid duplicative coverage. A construction of the no-fault insurance act which would require resort to the insurer of the involved motor vehicle whenever there is a one-vehicle accident would not be consistent with those purposes. Moreover, unless the "household" provision of the no-fault act authorizes a claim against the owner's or family member's insurer, it serves no apparent purpose because if the household member is injured in his own or a family member's automobile, he claims no-fault benefits from its insurer simply because he was an occupant of that vehicle at the time of the accident. The Legislature might have structured a no-fault act around the involved vehicle and such an act might

make more sense to some people; it decided, however, to make the owner's or family member's insurer primary. A motorcyclist injured in a motor vehicle accident must first look to his own insurer if he has one. If he does not, he looks then to the insurer of a relative domiciled in the same household. It is only when there is no policy issued to anyone in his household that the statute permits him to claim benefits from the insurer of the owner or driver of the motor vehicle involved in the accident.

5. The Court of Appeals found the delegation to the Insurance Commissioner of authority to approve deductibles unconstitutional and held the $5,000 deductible clause invalid on that ground. Whether a due-process test or a safeguards-against-abuse-of-discretion test is applied, the statutory standards and procedures are sufficient to sustain the delegation to the Insurance Commissioner. In authorizing deductibles the commissioner is guided by the purpose of the no-fault act and the general provisions of the Insurance Code. No deductible may thwart the purposes of the act. The commissioner is also governed by the Insurance Code in his exercise of discretion. The Legislature has provided the Insurance Commissioner with adequate standards to guide him in a decision to authorize a deductible and has provided persons and the insurance industry with adequate procedures by which they can secure judicial review of decisions by the commissioner. Therefore, the provision of the no-fault act authorizing the Insurance Commissioner to approve deductibles is not a constitutionally invalid delegation of authority. In *Porter,* the case is remanded to the Court of Appeals to consider other challenges to the validity of the $5,000 deductible provision, which were not addressed by that Court before.

The decision of the Court of Appeals is affirmed in *Underhill.* The decision of the Court of Appeals is reversed in *Porter* as to the constitutionality of the delegation of authority to the Insurance Commissioner to approve deductibles, and the case is remanded to the Court of Appeals for consideration of the additional challenges to the validity of the $5,000 deductible.

76 Mich App 13; 255 NW2d 349 (1976) affirmed.

80 Mich App 145; 263 NW2d 318 (1977) reversed in part.

1. INSURANCE — NO-FAULT INSURANCE — PERSONAL INJURY BENEFITS — MOTORCYCLES.

Motorcyclists, like all others suffering bodily injury as the result of an accident involving a motor vehicle, are entitled to no-fault personal injury insurance benefits; a motorcyclist is not in-

cluded among those whom the Legislature has excluded from benefits, and is among those covered by the "while not an occupant" language of the no-fault insurance act (MCL 500.3115[1]; MSA 24.13115[1]).

2. CONSTITUTIONAL LAW — NO-FAULT INSURANCE — MOTORCYCLES — EQUAL PROTECTION — DUE PROCESS.

The statutory scheme of the no-fault insurance act which allows motorcyclists to receive personal injury insurance benefits without requiring them to maintain no-fault security does not deny automobile drivers equal protection or due process of law, because the Legislature, in evaluating the risks to automobile owners posed by motorcyclists and the severe injuries suffered by motorcyclists in automobile-motorcycle accidents, could rationally conclude that motorcyclists are more like bicycle riders than automobile drivers (MCL 500.3103, 500.3115[1]; MSA 24.13103, 24.13115[1]).

3. INSURANCE — NO-FAULT INSURANCE — MOTORCYCLES — MULTIPLE INSURERS — PRIORITY.

A motorcyclist injured in a motor vehicle accident must first look to his own insurer if he has one, and if he does not, then to the insurer of a relative domiciled in the same household; it is only when there is no policy issued to anyone in his household that the no-fault insurance statute permits him to claim benefits from the insurer of the owner or driver of the motor vehicle involved in the accident (MCL 500.3114; MSA 24.13114).

4. CONSTITUTIONAL LAW — NO-FAULT INSURANCE — DEDUCTIBLES — ADMINISTRATIVE LAW — DELEGATION OF AUTHORITY — DUE PROCESS.

The Legislature has provided the Insurance Commissioner with adequate standards to guide him in a decision to approve a deductible under the no-fault insurance act and has provided persons and the insurance industry with adequate procedures by which they can secure judicial review of decisions by the Insurance Commissioner; therefore, the provision of the no-fault insurance act authorizing the Insurance Commissioner to approve deductibles is not an invalid delegation of authority (US Const, Am XIV; Const 1963, art 1, § 17; MCL 500.3109[3]; MSA 24.13109[3]).

5. INSURANCE — NO-FAULT INSURANCE — MOTORCYCLES.

The no-fault insurance act may not be construed as excluding the motorcyclist from its coverage for all purposes merely because motorcycles are excluded from the statutory definition of motor

vehicle (MCL 500.3101[2], 500.3105[1]; MSA 24.13101[2], 24.13105[1]).

6. CONSTITUTIONAL LAW — NO-FAULT INSURANCE — MOTORCYCLES — EQUAL PROTECTION.

The Legislature can constitutionally relieve motorcycle owners of the obligation to purchase no-fault insurance for themselves and others involved in accidents with them; although generically motorcycles are motor vehicles, they are sufficiently distinct from automobiles to be constitutionally singled out for distinct treatment (US Const, Am XIV; Const 1963, art 1, § 2; MCL 500.3101[2]; MSA 24.13101[2]).

7. INSURANCE — NO-FAULT INSURANCE — MULTIPLE INSURERS — PRIORITY.

The Legislature intended that an injured person who is insured, or whose family member is insured, for no-fault benefits would have primary resort to his own insurer; a construction of the no-fault insurance act which would require resort to the insurer of the motor vehicle involved whenever there is a one-vehicle accident would not be consistent with the legislative purposes of providing an incentive for the insurer to deal promptly and fairly with the customer, and to possibly reduce the cost of insurance by facilitating the use of deductibles to avoid duplicative coverage (MCL 500.3114; MSA 24.13114).

8. INSURANCE — NO-FAULT INSURANCE — DEDUCTIBLES — ADMINISTRATIVE LAW.

The Insurance Commissioner is guided in approving provisions for no-fault insurance deductibles by the purposes of the no-fault insurance act and the general provisions of the Insurance Code: no deductible may thwart the purposes of the no-fault insurance act as enunciated by the Legislature and elucidated by the Supreme Court (MCL 500.100 et seq., 500.3109[3]; MSA 24.1100 et seq., 24.13109[3]).

*DeVine, DeVine & Serr* (by *Douglas W. Buchanan*) for plaintiff Underhill.

*Keller, Keller, Creager, Kosick & Rochau* for plaintiff Porter.

*Lizza & Mulcahy, P.C.,* for defendant Safeco Insurance Company.

*Lilly & Domeny, P.C.,* for defendant Michigan Mutual Liability Company.

Amici Curiae:

*Polasky & Ladue* for Curtis T. Riehl.

*Jacobs & Miller* for Shelby Mutual Insurance Company.

LEVIN, J. The issues presented concern the status of motorcyclists under the no-fault motor vehicle liability act:

1) Are motorcyclists, who are not required to purchase no-fault insurance, entitled to "personal protection insurance benefits" (for work loss, allowable expenses and survivors' loss), commonly referred to as PIP or first-party benefits and hereafter referred to as "no-fault benefits"?

2) Does a legislative scheme exempting motorcyclists from the burden imposed on other motor vehicle owners of maintaining financial security for the payment of no-fault benefits but including them among the persons entitled to recover such benefits when injured in accidents involving motor vehicles violate the equal protection and due process rights of those who must maintain such security and thereby pay for the cost of no-fault benefits paid to motorcyclists?

3) Does the no-fault act contemplate that motorcyclists who own policies on motor vehicles or are domiciled with relatives who own such policies will seek benefits from their insurer, or that such benefits will be paid by the insurer of the motor vehicle involved in the accident?

4) Is a "limits of liability" clause, approved by the Commissioner of Insurance, providing a $5,000 deductible from no-fault benefits payable for injury

arising out of the use of an owned motorcycle by the named insured or relative, valid?

We hold:

1) Motorcyclists, like all others suffering bodily injury as the result of an accident involving a motor vehicle, are entitled to no-fault benefits.

2) Because the Legislature, in evaluating the risks to automobile owners posed by motorcyclists and the severe injuries suffered by motorcyclists in automobile-motorcycle accidents, could rationally conclude that motorcyclists are more like bicycle riders than automobile drivers, the statutory scheme which allows them benefits without requiring them to maintain no-fault security does not deny automobile drivers equal protection or due process of law.

3) A motorcyclist injured in a motor vehicle accident must first look to his own insurer if he has one. If he does not, he looks then to the insurer of a relative domiciled in the same household. It is only when there is no policy issued to anyone in his household that the statute permits him to claim benefits from the insurer of the owner or driver of the motor vehicle involved in the accident.

4) The provision of the no-fault act authorizing the commissioner to approve deductibles is not an invalid delegation of authority. *Porter* is remanded to the Court of Appeals to determine whether the $5,000 deductible provision is otherwise invalid.

I

Randy Craig Underhill was injured when the motorcycle he was operating collided with an automobile insured under a no-fault policy issued by Safeco Insurance Company. He required hospital

and other medical care and was temporarily unable to work. Underhill lived alone and did not own an automobile. His motorcycle was insured for liability but not for no-fault benefits. Underhill claimed benefits from Safeco. The circuit judge entered a summary judgment in his favor and the Court of Appeals affirmed. We affirm.

Philip Porter was injured when his motorcycle was struck by an automobile insured by Aetna Life & Casualty Company. Porter lived with his father, who owned an automobile insured by Michigan Mutual Liability Company. The father's policy included a "limits of liability" clause providing for a $5,000 deductible where the injury arises out of the use of an owned motorcycle by the "named insured or relative". Porter commenced this action seeking no-fault benefits from Michigan Mutual and argued that the $5,000 deductible was contrary to the act, that the delegation of authority to the commissioner to approve deductibles was without standards and therefore unconstitutional, and that the deductible unconstitutionally divided motorcyclists into two classes. He sought benefits from Aetna in the alternative. Aetna is no longer a party to the action. The circuit judge held that motorcyclists are excluded from the act and entered a partial summary judgment for both insurers. The Court of Appeals reversed and held that motorcyclists can recover under the act, and that Porter was entitled to recover from his father's insurer. We affirm. It also held that the $5,000 deductible was approved pursuant to an unconstitutional delegation of legislative authority; we vacate that holding and remand to the Court of Appeals to determine the validity of the deductible.

In *Underhill,* Safeco argues that a statutory

scheme which permits motorcyclists to recover no-fault benefits without requiring them to purchase no-fault insurance violates the Equal Protection and Due Process Clauses.

Although Michigan Mutual had taken much the same position in earlier phases of the *Porter* litigation, in this Court it concedes that motorcyclists are entitled to no-fault benefits when they sustain bodily injury in accidents involving motor vehicles and that motor vehicle no-fault insurance issued to the motorcyclist or a member of his family in the same household is made primary by the act. It asserts that the $5,000 deductible is valid.

Shelby Mutual, as amicus curiae in *Porter,* argues that the insurance covering the motor vehicle involved in the accident should be primary in all cases where the claimant was not an occupant of a motor vehicle, *i.e.,* when injured as a pedestrian, bicyclist or, by reason of the definition of "motor vehicle", as a motorcyclist although the injured person or a member of his family in the same household has no-fault insurance.

## II

The no-fault act requires that owners of "motor vehicles" maintain security for payment of no-fault benefits. Motorcycles are excluded from the definition by providing that a "motor vehicle" has more than two wheels.[1] It is separately provided, however, by a 1975 amendment to the act, that

---

[1] " 'Motor vehicle' as used in this chapter, except for section 3103, means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power *which has more than 2 wheels,* but does not include a moped as defined in section 32b of Act No. 300 of the Public Acts of 1949, being section 257.32b of the Michigan Compiled Laws." MCL 500.3101(2); MSA 24.13101(2) (emphasis supplied).

owners of motorcycles must maintain security for public liability.[2]

Motorcyclists thus, although required to maintain security for injuries caused to third parties through their negligence, are not required to purchase insurance providing no-fault benefits.

All parties appear to concede that by its terms the act entitles motorcyclists to no-fault benefits when they are involved in accidents with motor vehicles. Benefits are payable for "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle";[3] a motorcyclist is not among those whom the Legislature has excluded from benefits;[4] he is among those covered by the "while not an occupant" language of the act.[5]

It would not be consistent with the structure of

[2] "An owner or registrant of a motor vehicle with 2 wheels, except a moped, shall provide security against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by a person arising out of the ownership, maintenance, or use of that motor vehicle. The security shall conform with the requirements of section 3009(1)." MCL 500.3103; MSA 24.13103.

The 1975 amendment to the act, requiring motorcycle owners to maintain public liability insurance but not requiring that they maintain security for the payment of no-fault benefits, indicates that the Legislature, although aware that motorcycle owners were not required to maintain insurance to pay benefits under the no-fault act, decided to impose on them only the limited responsibility of maintaining insurance to cover public liability. 1975 PA 329.

[3] "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1); MSA 24.13105(1).

[4] MCL 500.3113; MSA 24.13113.

[5] "Except as provided in subsection (1) of section 3114, a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

"(a) Insurers of owners or registrants of motor vehicles involved in the accident.

"(b) Insurers of operators of motor vehicles involved in the accident." MCL 500.3115(1); MSA 24.13115(1).

the no-fault act—designed to provide no-fault bene-
fits to the populace at large for loss suffered as the
result of an accident involving a motor vehicle—to
infer a legislative purpose, inconsistent with the
language of the act, to exclude motorcyclists from
its protection.

The act may not be construed as excluding the
*motorcyclist* from its coverage for all purposes
merely because *motorcycles* are excluded from the
statutory definition of motor vehicle.

We hold that, under the terms of the no-fault
act, motorcyclists are entitled to claim no-fault
benefits when they are injured in accidents involv-
ing motor vehicles.

## III

Safeco contends that the act abridges the due
process and equal protection rights of owners of
motor vehicles. Although the Legislature requires
the motorcycle owner to maintain security for
liability to third parties and in doing so likens him
to the automobile owner, it groups him with pedes-
trians and bicyclists when defining the obligation
to provide no-fault benefits. He is not required to
purchase no-fault insurance but he may claim no-
fault benefits when he is injured in an accident
involving a motor vehicle. This system benefits
motorcyclists at motor vehicle owners' expense.

Safeco does not argue that only those who con-
tribute to the fund out of which no-fault benefits
are paid can constitutionally be permitted to re-
ceive benefits from the fund. To do so would be to
argue that pedestrians and occupants of motor
vehicles who do not own motor vehicles, and there-
fore do not purchase no-fault insurance, cannot

collect benefits when they are involved in motor vehicle accidents.

Safeco argues, rather, that motorcycles are motor vehicles and there is no rational reason for treating them differently from other motor vehicles. As a result of the legislative scheme there are two classes of vehicles, both free to operate on the public streets, and both capable of becoming involved in accidents causing injury, death and property damage. The owners of only one class are required to purchase no-fault insurance although the operators of both are entitled to no-fault benefits.

In *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978), cert den 442 US 934 (1979), this Court held that the Legislature could constitutionally relieve motorcycle owners of the obligation to purchase no-fault insurance for themselves and others involved in accidents with them. The question now before us is whether motorcyclists can rationally be included among those who may claim no-fault benefits under the act.

When the Legislature excluded motorcycles from the statutory class of motor vehicles, it not only excused their owners from the obligation to purchase no-fault insurance but also excluded motorcycles from the class of vehicles which give rise to a claim for no-fault benefits when involved in an accident. Thus, when a motorcycle is involved in an accident which does not involve a motor vehicle, no claim to no-fault benefits arises. If an automobile driver loses control and suffers accidental bodily injury as a result, he is entitled to benefits whether another vehicle is involved or not. A motorcyclist would not be entitled to benefits under the same circumstances. Similarly, if an automobile driver suffers injury in an accident

with a pedestrian or a motorcyclist, he is entitled to no-fault benefits. A motorcyclist sustaining injury in an accident involving a pedestrian or another motorcycle is not eligible for benefits.

Although generically motor vehicles, motorcycles are sufficiently distinct from automobiles to be constitutionally singled out for distinct treatment. In *Shavers* this Court said:

> "The actuarial data in the record tends to show that motorcycles are rarely at fault in motor vehicle accidents. Also, there was extensive testimony to the effect that in accidents involving motorcycles the drivers and passengers of motorcycles are killed or severely injured at a rate twice exceeding that of those involved in automobile accidents. Thus the inclusion of motorcycles in a no-fault system would result in insurance premiums so high as to preclude most motorcyclists from purchasing insurance. We believe these are, for purposes of satisfying equal protection, legitimate governmental interests. The exclusion of motorcycles from coverage under the No-Fault Act is, quite evidently, reasonably related to these legitimate interests." *Shavers v Attorney General, supra,* pp 633-634.

The same factors which support a legislative determination to exempt motorcycle owners from the obligation to maintain no-fault insurance coverage, thereby treating them differently from other motor vehicle owners, provide adequate rationale for the decision to permit motorcyclists, like bicyclists and pedestrians, to claim benefits when injured in accidents involving motor vehicles:

—The motorcycle-motor vehicle accident is much like the bicycle-motor vehicle accident. Motorcycles do comparatively little damage to motor vehicles and their operators. Motorcyclists are likely to

suffer substantial injuries in accidents involving motor vehicles.

—Motorcyclists, according to the record made in *Shavers*,[6] are "rarely at fault in motor vehicle accidents".

The Legislature could therefore rationally conclude that motorcyclists, like bicyclists, should receive no-fault benefits for injuries received in accidents involving motor vehicles although they do not maintain no-fault insurance.[7]

## IV

The dissenter in the Court of Appeals would hold that Philip Porter may not claim no-fault benefits under his father's policy but should claim them from the insurer of the owner of the motor vehicle involved in the accident. It is argued that this conclusion finds support in the language of the act and better serves its policies.

Under this view § 3114(1)[8] merely establishes the

---

[6] Opinion of Gilmore, J., *Shavers v Attorney General,* Wayne Circuit Court No. 73-248-068-CZ.

[7] *Cf. Carmichael v Southern Coal & Coke Co,* 301 US 495, 520-521; 57 S Ct 868; 81 L Ed 1245 (1937).

[8] "(1) Except as provided in subsections (2) and (3), a personal protection insurance policy applies to accidental bodily injury to the person named in the policy, his spouse, and a relative of either domiciled in the same household. When personal protection insurance benefits are payable to or for the benefit of an injured person under his own policy and would also be payable under the policy of his spouse, relative, or relative's spouse, the injured person's insurer shall pay all of the benefits and shall not be entitled to recoupment from the other insurer.

"(2) A person suffering accidental bodily injury while an operator or a passenger of a motor vehicle operated in the business of transporting passengers shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle. This subsection shall not apply to a passenger in the following, unless that passenger is not entitled to personal protection insurance benefits under any other policy:

"(a) A school bus, as defined by the department of education, providing transportation not prohibited by law.

priority between insurers where the injured person is insured under his own no-fault policy and also under the policy of a family member in the same household.[9]

Adoption of this view would mean not only that motorcyclists could not recover under the no-fault policy of a household member, but that they could not recover under their own policies if they own a motor vehicle with no-fault coverage.[10] It would

"(b) A bus operated by a common carrier of passengers certified by the public service commission.

"(c) A bus operating under a government sponsored transportation program.

"(d) A bus operated by or providing service to a nonprofit organization.

"(e) A taxicab insured as prescribed in section 3101 or 3102.

"(3) An employee, his spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

"(4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

"(a) The insurer of the owner or registrant of the vehicle occupied.

"(b) The insurer of the operator of the vehicle occupied." MCL 500.3114; MSA 24.13114.

[9] The first sentence of § 3114(1) states that the personal protection policy "applies" to the enumerated persons. In subsequent clauses of § 3114 the operative words are "shall pay", "shall receive" or "shall claim".

The Legislature thus used different formulations in the several subsections of § 3114. We read the term "applies" as used in this section to be just another way of saying that the insurer "shall pay" and the injured person "shall claim" and "shall receive".

Like other priority provisions, § 3114(1) begins "[e]xcept as provided [in other priority sections] * * *". The use of this phrase indicates that the first sentence of the section is itself a priority section, separate from and independent of the sentence which follows establishing the priority among household insurers.

[10] Section 3114(1) is the only section of the act which can be read to establish in the insured a right to claim benefits from his own insurance company. The insurer's obligations and the insured's entitlements under other sections are based on his relationship with the vehicle involved in the accident; then he claims, as would any other person, by virtue of his status as one injured while occupying or when struck by the insured vehicle.

further mean that no owner of a motor vehicle could recover from his own insurer unless he was injured while an occupant of the insured vehicle or was struck by that vehicle while a non-occupant.

Consequently, if a person is struck as a pedestrian or bicyclist by a vehicle not owned by him or is injured while an occupant of such a vehicle he would be required to claim no-fault benefits from the insurer of the vehicle involved in the accident although he is the owner of the vehicle insured for no-fault benefits. If the involved vehicle was uninsured he would claim through the assigned claims plan,[11] notwithstanding that he had purchased a no-fault policy.

It is our understanding of the legislative purpose that it was intended that injured persons who are insured or whose family member is insured for no-fault benefits would have primary resort to their own insurer. Since their own insurer would be primarily responsible, there would be an incentive for the insurer to deal promptly and fairly with the customer. Additionally, making the owner's or family member's insurer primary may reduce the cost of insurance by facilitating the use of deductibles to avoid duplicative coverage.

A construction of the act which would require resort to the insurer of the involved motor vehicle whenever there is a one-vehicle accident would not be consistent with those purposes.

Moreover, unless the household provision of § 3114(1) authorizes a claim against the owner's or family member's insurer, it serves little apparent purpose because if the household member is injured in the policyholder's automobile, he claims against its insurer simply because he was an occu-

---

[11] MCL 500.3172; MSA 24.13172.

pant of that vehicle at the time of the accident.[12]
And, under the alternative construction which we
reject, if he was injured while an occupant of or
when struck by another vehicle he must claim
against that vehicle.

The Legislature might have structured a no-
fault act around the involved vehicle and such an
act might make more sense to some people.[13] It
followed, however, the approach of most states and
of the uniform act[14] to make the owner's or family
member's insurer primary.

We conclude that the owner's or family mem-
ber's insurer is primary and that there may be
resort to the insurer of the involved vehicle only
when neither the injured person nor a family
member in whose household he is domiciled is
insured.

V

The no-fault policy issued to Porter's father by
Michigan Mutual contained a "limits of liability"
clause which provided that "any amount payable
by the company for personal protection benefits
shall be reduced by $5000 if the named insured or
relative sustains bodily injury while occupying a
two (2) wheel motor vehicle owned by the named
insured or a relative". Porter's father could have
purchased an endorsement for an additional pre-

[12] In that view, which we reject, it appears that the household
member provision would only provide first-party benefits to the house-
hold member who is injured while driving a non-owned uninsured
vehicle (under § 3114[4]) and to provide such benefits to his passenger
(under § 3114[4]) or pedestrian victim (under § 3115).

[13] This was the view taken by the dissenter in the Court of Appeals
in *Porter* and by the Court in *Davidson v Johnson,* 76 Mich App 497;
257 NW2d 139 (1977), *rev'd in part (On Rehearing),* 79 Mich App 660;
262 NW2d 887 (1977).

[14] 13 ULA, Uniform Motor Vehicle Accident Reparations Act, § 4,
pp 368-369 (1972 act). See, also, Comments, *id.,* pp 352, 369.

mium which would have eliminated that limits of liability clause.

Michigan Mutual argues that the limits of liability clause, which was approved by the Commissioner of Insurance, is an "[a]ny other deductible" authorized by § 3109(3) of the act.[15]

Porter argued, and the Court of Appeals held, that the delegation to the commissioner of the power to approve deductibles was unconstitutional because it did not provide standards to guide his exercise of discretion.

Whether a due process test[16] or a safeguards against abuse of discretion test[17] is applied, the standards and procedures are sufficient to sustain the delegation. In authorizing deductibles the commissioner is guided by the purpose of the no-fault act and the general provisions of the Insurance Code. No deductible may thwart the purposes of the act as enunciated by the Legislature and elucidated by this Court in *Shavers*. The commissioner is also governed by the Insurance Code in his exercise of discretion. Among the code's provisions are MCL 500.210; MSA 24.1210, which provides for the promulgation of rules by the commissioner, MCL 500.2236; MSA 24.12236, which requires that all policies be filed with and approved by the

---

[15] "An insurer providing personal protection insurance benefits may offer, at appropriately reduced premium rates, a deductible of a specified dollar amount which does not exceed $300.00 per accident. This deductible may be applicable to all or any specified types of personal protection insurance benefits but shall apply only to benefits payable to the person named in the policy, his spouse and any relative of either domiciled in the same household. Any other deductible provisions require the prior approval of the commissioner." MCL 500.3109(3); MSA 24.13109(3).

[16] *Westervelt v Natural Resources Comm,* 402 Mich 412; 263 NW2d 564 (1978) (WILLIAMS, J.); *Dep't of Natural Resources v Seaman,* 396 Mich 299; 240 NW2d 206 (1976).

[17] *People v Fields (On Rehearing),* 391 Mich 206, 224-225; 216 NW2d 51 (1974) (LEVIN, J., dissenting).

commissioner and which authorizes him to disapprove policies containing "inconsistent, ambiguous or misleading clauses", or containing "exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy", MCL 500.2403; MSA 24.12403, which establishes standards for setting rates, and, finally, MCL 500.244; MSA 24.1244, which provides for judicial review of decisions by the commissioner.

We conclude that the Legislature has provided the commissioner with adequate standards to guide him in a decision to authorize a deductible and has provided persons and the industry with adequate procedures by which they can secure judicial review of decisions by the commissioner.

Since the Court of Appeals found the delegation unconstitutional and on that basis invalidated the deductible, it did not address Porter's other claims. In this Court the parties briefed only the delegation issue. We therefore remand to the Court of Appeals to consider other challenges to the validity of the deductible.

In the trial court and Court of Appeals, Porter argued that the approval of the deductible violated the equal protection rights of some motorcycle operators by creating two distinct classes of motorcycle operators: i) those living in households with owned motor vehicles who must claim no-fault benefits from the family insurer under § 3114(1) and subject to a $5,000 deductible, and ii) those who do not live in such households who claim no-fault benefits from the insurer of the involved motor vehicle without regard to a $5,000 deductible.

In this Court it was asserted during oral argument that the $5,000 deductible effects "a com-

plete strangulation of the statutory scheme with regard to the payment of first-party benefits".

In *Underhill* we affirm. In *Porter* we affirm the Court of Appeals except its finding of an unconstitutional delegation, and remand to it for consideration of additional challenges to the validity of the $5,000 deductible. No costs, a public question.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.