180 N.J. Super. 146 (1981)
434 A.2d 605
KATHY WILNO, PLAINTIFF-APPELLANT,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1981.
Decided June 26, 1981.
*148 Before Judges ALLCORN, PRESSLER and FURMAN.
Benjamin N. Cittadino argued the cause for the appellant (Pellettieri, Rabstein & Altman, attorneys).
William F. Hartigan, Jr., argued the cause for the respondent (McLaughlin & Cooper, attorneys; Daniel E. Chase, on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
Plaintiff Kathy Wilno appeals from a summary judgment dismissing her complaint against defendant New Jersey Manufacturers Insurance Company (NJM) by which she sought personal injury protection benefits (PIP) under a policy issued to her by NJM covering an automobile owned by her. The judgment was based upon the trial judge's conclusion that the vehicle in which plaintiff was a passenger at the time of the single-vehicle accident in which she was injured was not an automobile within the intendment of the New Jersey Automobile Reparation Reform Act (No-Fault Law), N.J.S.A. 39:6A-1 et seq.
The facts are largely undisputed. Plaintiff was injured when the vehicle in which she was a passenger flipped over. The vehicle was then being operated by its owner, defendant Michael Robbins, on an off-road dirt track in a pinelands area of Jackson Township. Originally a Volkswagen "Beetle," the vehicle had been modified by Robbins into a form commonly known as a dune buggy. In that form it was neither registered nor registrable under the laws of this State because of its lack of such required safety equipment as directional signals, bumpers and a *149 full set of lights. Although other mechanical modifications had been made as well and the original tires had been replaced with what are known as all-terrain tires, the vehicle nevertheless remained a four-wheeled, two-seated automobile powered by an internal combustion engine, equipped with a roll cage instead of its original body, fitted out with seat belts and conventionally operated with brake, clutch and accelerator. The vehicle was uninsured and not required to be either registered or insured since it was not operated on the public streets or highways, its use being confined to that of a recreational off-road vehicle.
The mandate of N.J.S.A. 39:6A-4 is that every automobile liability policy  in this case plaintiff's policy on her own car  must provide PIP benefits to the named insured in respect of bodily injury sustained "as a result of an accident involving an automobile." The protection afforded to the named insured is not, of course, limited to an injury sustained as the result of an accident involving the insured vehicle but extends to an accident involving any automobile. See Amiano v. Ohio Casualty Ins. Co., 85 N.J. 85 (1981); Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475 (App.Div. 1976). Thus, the question before us is whether the dune buggy here involved, by reason of the mechanical modifications which rendered it unregistrable for use on public roads, forfeited its identity and character as an automobile under the No-Fault Law. We conclude that it did not.
We are first satisfied that the vehicle is within the literal statutory definition of an automobile, which is defined by N.J.S.A. 39:6A-2(a) as
... a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and a motor vehicle with a pick-up body, a delivery sedan or a panel truck or a camper-type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the insured other than farming or ranching. An automobile owned by a farm family copartnership or corporation which is principally garaged on a farm or ranch and otherwise meets the definitions contained in this *150 section, shall be considered a private passenger automobile owned by two or more relatives resident in the same household.
Moreover, N.J.S.A. 39:1-1 defines automobile as "all motor vehicles except motorcycles."[1] In qualifying the general definition of automobile with the modifier "private," it is clear that for purposes of the No-Fault Law, the Legislature intended to exclude commercial vehicles, including trucks, taxis, busses and livery vehicles, and that category of commercially-used vehicle which includes pick-up and panel trucks and delivery sedans. See Rybeck v. Rybeck, 141 N.J. Super. 481 (Law Div. 1976). It is, therefore, our view that as used by the No-Fault Law, "private" was intended to denote the opposite of commercial and "passenger" was intended to denote a vehicle which is constructed so as to accommodate riders in addition to the operator. Thus, we are satisfied that this dune buggy was, literally, a private passenger automobile not within any of the express exclusions of the definitional section of the No-Fault Law and hence within the scope of coverage afforded by the Act.
The primary argument relied on by NJM in resisting coverage is its contention that the act was not intended to extend coverage to accidents involving unregistrable automobiles. We, however, reject registrability of a particular automobile as a coverage precondition or as an implied component of the automobile definition. First, had the Legislature intended to exclude unregistrable automobiles in general or unregistrable automobiles intended exclusively for off-road recreational use in particular, it clearly could have expressly so provided. Moreover, we are persuaded that neither registrability nor actual registration of a vehicle is an essential or intrinsic definitional element of "automobile." Registration is a concept relating *151 exclusively to the privilege to use an automobile on a public road. See N.J.S.A. 39:3-4. It is not a concept affecting the nature of the vehicle itself. It is our further perception that both registration and registrability would constitute coverage standards whose application might well defeat the salutary remedial purposes of the act itself in specific cases.
Nor are we persuaded by the suggestion that the Legislature must be presumed to have intended to exclude as covered automobile accidents, because of the high risk factor, those involving off-road unregistrable recreational automobiles. No statistics of any kind were offered on this record to suggest that on any legitimate comparative basis the risk of injury is greater in respect of such automobiles than it is in respect of conventional automobiles using the public highways. Indeed, it would seem to us that the recreational off-road vehicle is spared that substantial element of accident risk resultant from ordinary traffic flow and which is reflected in the apparently substantially greater incidence of multi-car accidents than single car accidents.
Finally, we are of the view that if there were any coverage ambiguity engendered by the No-Fault Law, it would have ultimately resolved in favor of coverage. As our Supreme Court has recently observed, the No-Fault Law "itself requires us to construe its provisions liberally in order to effect the legislative purpose to the fullest extent possible. N.J.S.A. 39:6A-16." Amiano v. Ohio Casualty Ins. Co., supra, 85 N.J. at 90. And this is so, as the Supreme Court explained, because
The No Fault Act is social legislation intended to provide insureds with the prompt payment of medical bills, lost wages and other such expenses without making them await the outcome of protracted litigation. Mandated as a social necessity, PIP coverage should be given the broadest application consistent with the statutory language. Ibid.

Thus, we are satisfied that the relevant constructional principles here require the coverage conclusion. We are aware that the trial judge relied on decisions of sister states in reaching the opposite result. See Kansas Farm Bureau Ins. Co. v. Cool, 205 *152 Kan. 567, 471 P.2d 352 (Sup.Ct. 1970); Williams v. Cimarron Ins. Co., 406 S.W.2d 173 (Tex.Sup.Ct. 1966). We note, however, that neither of these cases dealt with personal injury protection statutes such as the No-Fault Law here involved and, in any event, to the extent their reasoning may be applicable, we clearly are not bound thereby.
The summary judgment appealed from is reversed. The matter is remanded to the trial court for further proceedings consistent herewith.
ALLCORN, P.J.A.D. (dissenting).
I would affirm the judgment of the Law Division.
Coverage for PIP benefits under the No-Fault Law (N.J.S.A. 39:6A-1 et seq.) is confined to "bodily injury as a result of an accident involving an automobile." N.J.S.A. 39:6A-4. So far as is here pertinent, the statute defines the term "automobile" as "a private passenger automobile of a private passenger or stationwagon type ...; and a motor vehicle with a pick-up body, a delivery sedan or a panel truck or a camper type vehicle used for recreational purposes...." N.J.S.A. 39:6A-2 a. The Motor Vehicle Act itself defines passenger automobile as meaning "all automobiles used and designed for the transportation of passengers, other than omnibuses and school buses." N.J.S.A. 39:1-1.
The ordinary and commonly accepted meaning of "automobile" is a "4-wheeled automotive vehicle designed for passenger transportation on streets and roadways and commonly propelled by an internal-combustion engine using a volatile fuel (as gasoline)," Webster's Third New International Dictionary (1971). Cf. Ferrante v. Foley, 49 N.J. 432, 438 (1967).
A dune buggy, on the other hand, patently is not a private passenger automobile designed and used solely or principally for the transportation of passengers on the public streets and highways. Concededly, it is instead a specially designed and constructed vehicle, intended and used solely or principally for *153 off-road recreational purposes. Had it been the intent of the Legislature to encompass this or any other type of recreational vehicle within the meaning of private passenger automobile, there would have been no necessity for the Legislature to expand the statutory coverage of a private passenger automobile to include "a camper type vehicle used for recreational purposes," N.J.S.A. 39:6A-2 a.
That the No-Fault Law is to be liberally construed, is not open to challenge. Liberality of construction, however, does not extend to license. As the Supreme Court has admonished and made plain, this principle of liberal interpretation must be limited by and "consistent with the language of the pertinent statute." Motor Club of America v. Phillips, 66 N.J. 277, 293 (1974); Weathers v. Hartford Ins. Group, 77 N.J. 228, 240 (1978). The same admonition was endorsed most recently in Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 90 (1981). To so interpret the statutory language as to include a dune buggy as coming within the designation of private passenger automobile, is manifestly contrary to the plain design and intent of the Legislature  the two classes of vehicles are mutually exclusive.
Moreover, a dune buggy is a high-risk, vehicle by reason of the very nature of its construction, as well as by virtue of the area, terrain and method of operation. The dune buggy here involved was converted from a standard Volkswagen 2-door, 4-passenger, private passenger automobile by the owner and driver, Robbins. Among other modifications, the entire body was removed from the chassis and the frame was shortened. In its converted state at the time of the occurrence of the injuries to plaintiff passenger, the dune buggy had no body  no sides, no roof and no windshield. Thus, other than a lap belt, the occupants were afforded no protection whatever against the danger of being thrown out of the vehicle  the so-called roll cage was of no protection in this regard, consisting simply of two roll bars for the purpose of protecting the occupants from being crushed under the vehicle in the event it overturned upon them, but affording no shield or screen to prevent their ejection.
*154 Obviously, the dune buggy is intended for off-road use by those who seek the thrill of courting and inviting the risks inherent in driving the vehicle over rough and uneven terrain and under other hazardous conditions, pitting the skill of the driver and the risk of the occupants against upending or overturning the vehicle  or, as here, the challenge of speeding around a small, oval dirt and sand racetrack, with uneven and rutted surfaces. (Plaintiff estimated that the dune buggy was traveling at approximately 60 miles per hour. Robbins testified that the accident occurred while "going through ... [a] corner.")
Surely, neither the Legislature nor the companies intended to cover the risks voluntarily assumed by those persons who deliberately seek out and expose themselves to the known and unknown dangers entailed in driving or riding in a dune buggy in its natural habitat. Indeed, this conclusion is stoutly bolstered by the report of the New Jersey Legislative Study Commission on No-Fault Automobile Insurance Reform in New Jersey to the Legislature, dated December 1977. The Commission recommended against amendment of the Law so as to include coverage for motorcycles. As one of the reasons underlying its recommendation, the Commission stated (at 43):
Aside from the cost factor, most motorcyclists use their motorcycles for pleasure or sporting purposes, off the public ways.... Moreover, motorcyclists recognize the extraordinary hazard involved in motorcycle riding and assume the risk themselves....
Cf. Annotation, "Liability for negligent operation of dune buggy," 2 A.L.R.4th 796 (1980).
In short, a dune buggy is not a private passenger automobile within the meaning or contemplation of the statute. See Kansas Farm Bur. Ins. Co. v. Cool, 205 Kan. 567, 471 P.2d 352 (1970); Annotation, "What constitutes `automobile' for purposes of uninsured motorist provisions," 65 A.L.R.3d 851 (1975).
For the foregoing reasons, I would affirm the judgment of the Law Division.
NOTES
[1] N.J.S.A. 39:1-1 further defines a motor vehicle as any vehicle "propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks." It also defines passenger automobile as any automobile "used and designed for the transportation of passengers, other than omnibuses and school buses." N.J.S.A. 39:1-1 does not undertake to define "private passenger automobile."