*Farms, Inc.,* 56 *N.J.* 288 (1970); *Draney v. Bachman,* 138 *N.J.Super.* 503 (App.Div.1976).

■ There is a clear absence of evidence in this case to support a factual conclusion of negligence on the part of defendant. The conduct of defendant bank was outside the scope of the law's conception of fault. The statute does not apply.

Further, there is no evidence that check No. 4113 was ever in the hands of the bank officials. It is just as likely that someone employed by the printing firm or the Chase Manhattan Bank withdrew the 22 checks before delivery of the stock of checks to defendant bank.

Defendant's motion for entry of judgment in its favor shall be granted.

BRIAN J. MORGAN AND JULIA MORGAN, PLAINTIFFS, v. MICHAEL ORCINOLI, MARY ORCINOLI, ALLSTATE INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, MOTOR CLUB OF AMERICA INSURANCE COMPANY AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided November 25, 1981.

*Terry Shapiro* for plaintiffs.

*McDermott, McGee & Ruprecht* for defendant Allstate Insurance Company (*Richard P. Maggi* appearing).

*Mattson, Madden & Polito* for defendant Unsatisfied Claim & Judgment Fund Board (*Mary Lynne McDermott* appearing).

THOMAS, J. S. C.

Are the New Jersey Automobile Reparation Reform Act (No Fault Law), *N.J.S.A.* 39:6A–1 *et seq.*, and the Unsatisfied Claim and Judgment Fund Law, *N.J.S.A.* 39:6–61 *et seq.*, which exclude motorcyclists from personal injury protection (P.I.P.) cov-

erage, in violation of motorcyclists' equal protection rights? The answer is no.

▉▉▉ Plaintiff was injured when the motorcycle he was operating collided with an automobile. He contends the company insuring his motorcycle or, in the alternative, the UCJ Fund should provide him with P.I.P. coverage even though both statutes (*N.J.S.A.* 39:6A–4 and *N.J.S.A.* 39:6–86.1) exclude motorcyclists from such benefits. Plaintiff contends the legislative distinction between automobile drivers and motorcyclists bears no rational relation to the Legislature's purpose.

The rules for judicial review of a legislative classification challenged as discriminatory are well settled. First, the challenger must overcome a strong presumption of validity. *Hutton Park v. West Orange*, 68 *N.J.* 543, 564–565 (1975). Next, it must be shown that the classification is arbitrary, *i.e.*, without any reasonable basis or an invidious discrimination.[1]

The law is sustained if any reasonable basis exists for separate treatment.

"If there is some reasonable basis for the recognition of separate classes, and the disparate treatment of the classes has a rational relation to the object sought to be relieved by the lawmakers, the constitution is not offended." [*N. J. Chapt. Amer. J. P. v. N. J. State Bd. Prof. Planners*, 48 *N.J.* 581, 601 (1967)]

*David v. Vesta Co.*, 45 *N.J.* 301, 314–15 (1965); *Fried v. Kervick*, 34 *N.J.* 68, 74 (1961).

There is no question that the Legislature intended to preclude motorcyclists from no fault coverage. It is also obvious from later reports of the Commission assigned the task of reviewing the law that they recommended to the Legislature the continued exclusion of motorcyclists from no fault coverage. *Legislative History of No Fault Automobile Insurance in New Jersey* at 7; *New Jersey Legislative Study Commission on No-Fault Automo-*

---

[1]An exception to this rule is if a fundamental right or suspect classification is implicated. Plaintiff concedes that we are not confronted with this exception. *Rybeck v. Rybeck*, 141 *N.J.Super.* 481, 493–495 (Law Div.1976), app. dism., 150 *N.J.Super.* 151 (App.Div.1977).

*bile Insurance Reform in New Jersey to the Legislature* (Dec. 1977), at 43–45 (quoted in *Wilno v. N. J. Mfrs. Ins. Co.*, 180 *N.J.Super.* 146, 154 (App.Div.1981) (Allcorn, P. J. A. D. dissenting)).

The reasons for this exclusion are numerous. As stated by the Commission studying our no fault system:

The Commission also believes that extending no-fault coverage to motorcycles, through separate motorcycle policies, could have a very adverse affect [*sic*] on the cost of motorcycle insurance. The effect, according to some estimates presented to the Commission, could result in a loss of the insurance market for motorcycles and even price motorcycle ownership out of the reach of most persons, or in fact, encourage the operation of motorcycles without insurance.

Aside from the cost factor, most motorcyclists use their motorcycles for pleasure or sporting purposes, off the public ways. The use of motorcycles may also be sharply curtailed during winter months. Moreover, motorcyclists recognize the extraordinary hazard involved in motorcycle riding and assume the risk themselves. Finally, motorcycles represent a far greater risk of harm to their own operators or riders than to any other persons. [*New Jersey Legislative Study Commission on No Fault Automobile Insurance Reform in New Jersey to the Legislature, supra* at 43]

The same classification issue was discussed in *Rybeck v. Rybeck*, 141 *N.J.Super.* 481 (Law Div.1976), *app. dism.*, 150 *N.J.Super.* 151 (App.Div.1977) (lack of standing), where the court, in dictum, stated:

Some of the classifications have obviously reasonable bases. Motorcycles are left out because the available information showed that driver and passenger injuries are so frequent that no fault premiums would be excessive. [*Id.* at 503]

Other jurisdictions concur in this position. *Lasky v. State Farm Ins. Co.*, 296 *So.*2d 9, 21–22 (Fla.1974); *Morse v. State Farm Ins. Co.*, 328 *So.*2d 542, 542 (Fla.App.1976); *Manzanares v. Bell*, 214 *Kan.* 589, 522 *P.*2d 1291, 1310–12 (1974); *Montgomery v. Daniels*, 38 *N.Y.*2d 41, 63, 340 *N.E.*2d 444, 457, 378 *N.Y.S.*2d 1, 19 (Ct.App.1975); *Singer v. Sheppard*, 464 *Pa.* 387, 346 *A.*2d 897, 906 (1975). *See Underhill v. Safeco Ins. Co.*, 407 *Mich.* 175, 284 *N.W.*2d 463, 468–70 (1979); *Shavers v. Attorney General*, 402 *Mich.* 554, 267 *N.W.*2d 72, 103–04 (1978) *cert. den.* 442 *U.S.* 934, 99 *S.Ct.* 2869, 61 *L.Ed.*2d 303 (1979); *Hill v. Aetna Life & Cas. Co.*, 79 *Mich.App.* 725, 263 *N.W.*2d 27, 29–30 (Ct.App.1977).

342

The reasoning of the Legislature constitutes a rational basis for precluding motorcyclists from P.I.P. benefits. Such exclusion does not constitute a violation of plaintiff's equal protection rights.