225 N.J. Super. 606 (1988)
543 A.2d 110
KATHLEEN SIMON, EXECUTRIX OF THE ESTATE OF ALBERT J. CARINO, DECEASED, AND DOROTHY CARINO, PLAINTIFFS-APPELLANTS,
v.
CNA INSURANCE COMPANY AND CONTINENTAL INSURANCE CASUALTY COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 12, 1988.
Decided June 20, 1988.
*607 Before Judges ANTELL and DEIGHAN.
Joseph F. Lisa, attorney for appellants (Joseph F. Lisa on the brief).
LaBrum and Doak, attorneys for respondents (Ronald J. Uzdavinis on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Plaintiffs Kathleen Simon, Executrix of the Estate of Albert J. Carino, Deceased, and Dorothy Carino appeal from a judgment entered June 22, 1987 which, although granting other relief, dismissed their claim for income continuation benefits pursuant to N.J.S.A. 39:6A-4b and 10 of the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq. (No-Fault Act). Plaintiffs maintained they were entitled to *608 additional income continuation benefits pursuant to N.J.S.A. 39:6A-10 upon death of the decedent arising out of an automobile accident. Although the Court granted plaintiffs' judgment for $14,600 for essential service benefits, plaintiffs assert that the interest on the award should have been computed as compound interest as of October 4, 1983. Consequently they also appeal from that part of the order allowing only simple interest.
The facts are not in dispute. On August 4, 1982, Albert J. Carino died as a result of injuries sustained in a motor vehicle accident. Decedent was employed by the State of New Jersey as a special agent by the Department of the Treasury and was driving a vehicle owned by the State at the time of the accident. He was earning $25,136.09 per year, or approximately $481.55 per week. His wife has been awarded dependency benefits under the Workers' Compensation Benefits Act, N.J.S.A. 34:15-1 et seq., consisting of $217 per week payable for 450 weeks pursuant to N.J.S.A. 34:15-12 and -13. As of April 15, 1987, she had received approximately $52,080 in dependency benefits, representing payments for 240 weeks.
At the time of the accident, decedent was insured under an automobile liability policy for personal injury protection (PIP) issued by defendants. Pursuant to N.J.S.A. 39:6A-10, the decedent exercised option 3 for additional PIP benefits which provides for maximum income continuation benefits of $18,200 and maximum essential service benefits of $14,600.
On plaintiffs' motion for summary judgment, the trial judge ruled that income continuation benefits were offset by the workers' compensation benefits received, but granted summary judgment in favor of plaintiffs for $14,600, the maximum amount of essential service benefits.
Although defendants CNA Insurance Company and Continental Casualty Company have not filed a cross-appeal, they seek to support the trial court's partial dismissal of plaintiffs' claim by arguing that the state-owned vehicle decedent was driving at *609 the time of the accident was not a "private passenger automobile" and that therefore no PIP benefits were payable.

I
Plaintiffs contend the maximum income continuation benefits are payable upon the death of decedent without offset for the workers' compensation dependency benefits being paid to decedent's widow.
Since the policy was issued prior to January 12, 1982, the rights of plaintiff are determined by Muschette v. The Gateway Insurance Co., 149 N.J. Super. 89 (App.Div. 1977), aff'd 76 N.J. 560 (1978). In Muschette this court held that essential service benefits and income continuation benefits payable under N.J.S.A. 39:6A-4b. and c. were payable without the necessity of proving the actual amount of loss. 149 N.J. Super. at 94-99; see also Maros v. Transamerica Insurance Company, 76 N.J. 572, 576-579 (1978).[1] The issue here is whether income continuation benefits payable under the Workers' Compensation Act must be offset pursuant to N.J.S.A. 39:6A-6, the collateral source rule which provided in part:
The benefits provided in section 4a., b., c., d., and e. [N.J.S.A. 39:6A-4a through e] and section 10 [N.J.S.A. 39:6A-10], shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits collectible under workmen's compensation insurance .. . shall be deducted from the benefits collectible under section 4a., b., c., d., and section 10.
Relying on Skryha v. Pennsylvania Nat. Mut. Cas., 206 N.J. Super. 66 (App.Div. 1985), Judge Wallace properly concluded that N.J.S.A. 39:6A-6 does not bar recovery of essential service benefits because "[n]o provision is made in the Workers' *610 Compensation Law for compensating a surviving dependent for the loss of the uncompensated services which the decedent rendered to his family." 206 N.J. Super. at 70. We therefore held that since essential service benefits were not collectible under the Workers' Compensation Act, there was no collateral estoppel pursuant to N.J.S.A. 39:6A-6 and those benefits were payable under the No-Fault Act.
On the other hand, in Skryha we held that since the maximum workers' compensation benefits payable exceeded the maximum amount of income continuation benefits, no income continuation benefits were payable. Id. at 70. Under this holding, the trial judge again properly disallowed the claim for income continuation benefits payable under N.J.S.A. 39:6a-4b. and 10.
The purpose of N.J.S.A. 39:6A-6 is to prevent a double recovery of income benefits. Zoller v. Transamerica Ins. Co., 215 N.J. Super. 552, 558 (App.Div. 1987), certif. den. 108 N.J. 214 (1987); Smith v. Allstate Ins. Co., 203 N.J. Super. 610, 615 (Law Div. 1985). As stated in Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 566 (1981):
When the Legislature desired to modify the impact of having the automobile liability insurance company pay PIP benefits, it has done so in unmistakable fashion. Thus the Legislature has expressly provided that PIP payments shall be reduced by the amount of workers' compensation benefits collectible under the Workers' Compensation Act. N.J.S.A. 39:6A-6. In that event, the automobile liability carrier will receive the benefit of workers' compensation because of the express legislative intent. [Emphasis supplied.]
Obviously decedent's widow will be receiving a double recovery if she is paid income continuation benefits in addition to dependency benefits pursuant to the Workers' Compensation Act.
The Workers' Compensation Act and the No-Fault Act treat coextensively in some instances with the same benefits. Wagner v. Transamerica Insurance Company, 167 N.J. Super. 25, 34 (App.Div. 1979). "N.J.S.A. 39:6A-6, in requiring the deduction of collectible PIP benefits, is a clear legislative mandate that workers' compensation should be the ultimate source for recovery...." Id.
*611 In their brief, plaintiffs interchange the income continuation benefits under N.J.S.A. 39:6A-4b. and survivor benefits under 39:6A-4d.[2] In their issues, plaintiffs refer to the "maximum ICB [income continuation benefits] survivor benefits that are automatically payable in full immediately upon death of an income producer"; that they are entitled to "unpaid ICB survivor benefits from November 6, 1982, [Points Ic and d] and interest on the `ESB' [essential service benefits] survivor benefits" awarded by the trial court. [Point II) They refer to "the survivor benefits" as having been treated as a form of life insurance payable on death under Maros v. Transamerica Insurance Company and Muschette v. The Gateway Insurance Co. (Emphasis supplied.) Neither Maros nor Muschette dealt with survivor benefits under N.J.S.A. 39:6A-4d., which provides, in part:

Survivor benefits. In the event of the death of an income producer as a result of injuries sustained in an accident entitling such person to benefits under section 4 of this act, [N.J.S.A. 39:6A-4] the maximum amount of benefits which could have been paid to the income producer, but for his death, under section 4 b. shall be paid to the surviving spouse, or in the event there is no surviving spouse, then to the surviving children, and in the event there are no surviving spouse or surviving children, then to the estate of the income producer.
No one disputes the payment of survivor benefits (now death benefits) as a separate PIP coverage under the No-Fault Act. No issue has even been raised concerning the separate survivor benefits which are payable only in the event of death of an income producer and are separate and distinct from income continuation benefits and essential service benefits payable under N.J.S.A. 39:6A-4b.[3] and c.
*612 There is also a fifth PIP benefit under the No-Fault Act for payment of funeral expenses. N.J.S.A. 39:6A-4e. In Skryha we disallowed the $1,000 maximum benefit for funeral expenses from the PIP carrier because plaintiff had recovered a $2,000 funeral benefit under workers' compensation insurance and was therefore barred from double payment under N.J.S.A. 39:6A-6. 206 N.J. Super. at 71.
The simple answer to plaintiffs' contention that under Muschette v. The Gateway Insurance Co. and Maros v. Transamerica Ins. Co. the wife is entitled to income continuation benefits under the No-Fault Act is that in those cases, no claim for dependency benefits payable under the Workers' Compensation Act was made and the collateral source rule, section 39:6A-6, was not involved.
We hold that under the facts and circumstances of this case, plaintiffs are precluded from a double recovery for income continuation benefits under the No-Fault Act and dependency benefits under the Workers' Compensation Act, which, as here, are greater than the maximum amount of income continuation benefits.

II
There is no merit to plaintiffs' contention that the interest awarded on the judgment for essential services benefits should have been computed as compound interest as of October 4, 1983. Prior to October 4, 1983, N.J.S.A. 39:6A-5c provided: "All overdue payments shall bear simple interest at the rate of 10% per annum." By L. 1983, c. 362, § 8, effective October 4, 1983, this section was amended to provide: "All overdue payments shall bear interest at the percentage of interest prescribed in the Rules Governing the Courts of the State of New Jersey for judgments, awards and orders for the payment of money."
Undoubtedly, the term "simple" was deleted because it was no longer needed in light of the reference to the court rules. *613 The applicable court rule, R. 4:42-11, provides for simple interest on judgments, awards and other orders for the payment of money. Here, the trial court properly ordered that the calculation be based upon simple rather than compound interest.
To the extent that Miskofsky v. Ohio Cas. Ins. Co., 203 N.J. Super. 400, 416 (Law Div. 1984) holds that after October 4, 1983, "all overdue payments shall bear interest, which may be compounded, at the percentage rate of 12%", it is overruled.

III
While defendants have not cross-appealed, they argue, presumably as an alternate ground for denying plaintiffs income continuation benefits, that because the vehicle decedent was driving at the time of the accident was owned by the State, it was not a private passenger vehicle and therefore did not fall within the No-Fault Act's definition of "automobile". Judge Wallace rejected defendants' argument, reasoning that "the private passenger distinction goes to the use of the vehicle and not the ownership of the vehicle."
N.J.S.A. 39:6A-2a defines "automobile" as "a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver;...." In Wagner v. Transamerica Insurance Company, supra, a car salesman who was injured in a work-related automobile accident instituted an action against his employer's garage keeper's liability insurance carrier for PIP medical expense benefits under the policy. The issue was whether an *614 automobile, which was commercially owned and used for business pursuits of plaintiff's employer, came within the definition of "automobile" under N.J.S.A. 39:6A-2a. We held that:
The vehicle involved in the present case was a private passenger automobile. It was neither used as a public or liveried conveyance for passengers nor was it rented to others with a driver. Transamerica contends that the Legislature really intended the No-Fault Law to apply only to vehicles used for personal and family purposes in contrast to vehicles used for commercial purposes. But such an intent is not evident from the language used in the statute. [Wagner, 167 N.J. Super. at 31]
In support of our conclusion, we cited Iavicoli, No-Fault & Comparative Negligence in New Jersey, (1973), § 41 at 96:
Note well that the definition of automobile includes all private passenger automobiles except ones used for public or livery conveyance and automobiles rented with a driver. Therefore, if an individual or company owns an automobile used in his profession or its business, that automobile must maintain the above mentioned [PIP] coverage. [Wagner, 167 N.J. Super. at 31-32]
See Christy v. City of Newark, 102 N.J. 598, 604 (1986) where the Supreme Court, in summarizing the holding of this court in that case, noted that we had rejected "as without merit" the claim of the City of Newark, that its police car was not a private passenger automobile. We "concluded that the inclusion of the word `private' in the definition was for the purpose of distinguishing normal passenger-type cars from those used `as a public livery or conveyance of passengers' or `rented to others with a driver.'" Ibid. See also Miller v. Farmers Mutual Automobile Insurance Co., 179 Kan. 50, 292 P.2d 711, 715 (1956), where the court rejected the argument that because a vehicle was government-owned, it did not qualify as a "private" passenger automobile, stating: "[t]he test to be applied to the word `private' is the type of vehicle and not its ownership", but see Commercial Insurance Co. of Newark, N.J. v. Gardner, 233 F. Supp. 884, 888 (E.D.S.C. 1964), where the court held that a police car was not a "private passenger automobile."
In our view, there is no indication that the Legislature used the term "private" automobile in N.J.S.A. 39:6A-2a as being the opposite to government ownership of an automobile. If the Legislature had intended to exclude all government-owned vehicles *615 from the No-Fault Act's coverage, it would have expressed that intent. We reject defendants' interpretation of the definition of "automobile" and affirm the trial judge's ruling.
Affirmed.
NOTES
[1] Effective January 12, 1982, pursuant to L. 1981, c. 533, § 1, N.J.S.A. 39:6A-10 was amended to provide that the optional income continuation benefits and essential service benefits would cease upon the death of the claimant and would not operate to increase any basic death benefits provided under § 4 of the No-Fault Act. The amendment was necessary to nullify insofar as applicable, Muschette v. Gateway Insurance Co. The amendment is prospective only. See §§ 2 and 3.
[2] Such benefits are now referred to as "death benefits." See L. 1983, c. 362, § 7; L. 1981, c. 533, § 1. The change was made because "`death benefit' is a more accurate description of the coverage provided under no-fault than is the term `survivor benefit.'" Senate, Labor, Industry and Professions Committee, Statement to Assembly, No. 1853, June 25, 1981.
[3] This section was amended by L. 1983, c. 362, § 7 by adding "except that in no case shall income continuation benefits exceed the net income normally earned during the period in which the benefits are payable."