813 A.2d 1230

NEW JERSEY MANUFACTURERS INSURANCE COMPANY, PLAINTIFF–APPELLANT, v. BERNIE J. HARDY, KASON CHEEKS AND HAVERON TOTAL HEALTH, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 9, 2002—Decided January 17, 2003.

Before Judges KING, WEFING and LISA.

*Robert F. Cox* argued the cause for appellant (*McCreedy and Cox,* attorneys; *Mr. Cox,* on the brief).

*Scott J. Marum* argued the cause for respondents (*Andrew H. Graulich,* attorney and on the brief).

The opinion of the court was delivered by

WEFING, J.A.D.

Kason Cheeks is employed as a police officer by the City of Newark. At approximately 3:40 a.m. on February 10, 2001, while on duty, Cheeks was injured in an automobile accident. He and his partner were on patrol. His partner was driving the marked police cruiser when it was struck in the rear by an intoxicated driver. Cheeks sustained injuries to his neck and his back.

Cheeks' father, Bernie J. Hardy, held an automobile insurance policy issued by New Jersey Manufacturers Insurance Company ("Manufacturers") that was in effect on the date of the accident. Although not entirely clear on the record before us; for purposes of this appeal, Manufacturers does not dispute that Cheeks qualifies as a resident relative under the terms of that policy.

In addition to filing a claim for workers' compensation benefits, Cheeks also sought Personal Injury Protection (PIP) benefits under his father's policy with Manufacturers, specifically, the cost of the chiropractic care he received at a chiropractic facility known as Haveron Total Health ("Haveron"). Manufacturers declined PIP coverage on the ground that the Newark police cruiser was not a "private passenger automobile."

Cheeks then assigned his claim against Manufacturers to Haveron, which sought arbitration of its outstanding bills. Manufacturers, in turn, filed a declaratory judgment action seeking a determination that Cheeks was not entitled to PIP benefits under his father's policy. It named as defendants Hardy, Cheeks and Haveron. The matter was presented to the trial court on cross motions for summary judgment. The trial court found for defendants. Manufacturers appeals and we reverse.

*N.J.S.A.* 39:6A–4 mandates PIP coverage for covered individuals "who sustain bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile." *N.J.S.A.* 39:6A–2 defines an automobile in the following manner:

[A] private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or camper type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the insured other than farming or ranching.

What constitutes a "private passenger automobile" has been litigated in a variety of contexts. *Wilno v. N.J. Mfrs. Ins. Co.*, 180 *N.J.Super.* 146, 434 *A.*2d 605 (App.Div.1981), *rev'd on dissent*, 89 *N.J.* 252, 445 *A.*2d 713 (1982) (finding a dune buggy, which had

been modified for off-road use, not to be a private passenger automobile and passenger injured when the vehicle overturned not entitled to PIP benefits under her own policy); *Wagner v. Transamerica Ins. Co.,* 167 *N.J.Super.* 25, 400 *A.*2d 497 (App.Div.), *certif. denied,* 81 *N.J.* 60, 404 *A.*2d 1159 (1979) (finding an automobile owned by a dealership and being demonstrated by a salesman to customer at time of accident to be a private passenger automobile, but injured salesman's claim for PIP benefits barred by the collateral source rule, *N.J.S.A.* 39:6A–6).

■ No one factor is determinative. The manner in which the title is held is not dispositive. *Simon v. CNA Insurance Co.,* 225 *N.J.Super.* 606, 543 *A.*2d 110 (App.Div.), *certif. denied,* 113 *N.J.* 350, 550 *A.*2d 461 (1988) (finding that a government-owned vehicle can be a private passenger automobile). Nor is the manner of use at the time of the incident controlling. *CSC Ins. Services v. Graves,* 293 *N.J.Super.* 244, 679 *A.*2d 1244 (Law Div.1996) (finding a passenger van used for day care center transportation to be a private passenger automobile for purposes of PIP, since it was not used as public or livery conveyance or rented to others with a driver).

Research has not disclosed a reported New Jersey case that has analyzed whether a police cruiser can be considered a private passenger automobile. Other courts have concluded, however, that police cars are not private passenger automobiles. *See Couch on Insurance* 3d, § 116.3 (2002) ("Police cars have not been included in the definition of 'private passenger automobiles' generally on the ground that such vehicles are publicly owned, and specially designed and built"); Annotation, *What Constitutes "Private Passenger Automobile" in Insurance Policy Provisions Defining Risks Covered or Excepted,* 11 *A.L.R.4th* 475, § 6 (1982).

In *Christy v. City of Newark,* 102 *N.J.* 598, 510 *A.*2d 22 (1986), the Supreme Court held that a Newark police officer, injured by a hit-and-run driver who hit the police car he was driving while on duty, was entitled to collect uninsured motorist benefits under *N.J.S.A.* 39:6A–14. That statute, however, making uninsured

motorist coverage compulsory, refers simply to "automobile," without the modifying restriction of "private passenger."

Although the nature of the modifications involved in this particular instance are not set forth in the record before us, we consider it clear that police cruisers are modified to make them suitable for the hazards they routinely encounter. *Closter Serv. Stat. Inc. v. Ridgefield Pk. Comm'rs.*, 99 *N.J.Super.* 69, 238 *A.*2d 504 (App.Div. 1968). The use to which police patrol cars are put by police officers is inherently risky. *Fielder v. Stonack*, 141 *N.J.* 101, 115, 661 *A.*2d 231 (1995) (noting that police motor vehicle chases involve inherent risk of injury); *Tice v. Cramer*, 133 *N.J.* 347, 383, 627 *A.*2d 1090 (1993) (O'Hern, J., concurring) (recognizing that high-speed vehicle pursuits are possibly the most dangerous of all ordinary police activities). Because of the "increased demands of police service," independent organizations test different vehicles to assist different agencies with their buying decisions. Bulletin, National Law Enforcement and Corrections Technology Center, November 2001, *available at* http://www.justnet.org/pdffiles/msp2002bulletin.pdf. They note that "regular production passenger vehicles not specifically designed for police service" can provide "inadequate performance." *Ibid.*

In determining whether this Newark police cruiser should be considered a private passenger automobile, thereby triggering PIP coverage for Officer Cheeks under his father's policy, the underlying purposes of PIP coverage should be kept firmly in mind. "The No Fault Act is social legislation intended to provide insureds with the prompt payment of medical bills, lost wages and other such expenses without making them await the outcome of protracted litigation." *Amiano v. Ohio Casualty Ins. Co.*, 85 *N.J.* 85, 90, 424 *A.*2d 1179 (1981); *Stevenson v. State Farm Indem. Co.*, 311 *N.J.Super.* 363, 709 *A.*2d 1359 (App.Div.1998).

Those same laudable purposes, however, are fully achieved by the workers' compensation benefits available to Cheeks. We perceive no reason in logic or policy why Cheeks should be able to

transfer the cost of his work-related injuries to Manufacturers, thus, entirely circumventing the statutory forum available to him.

The judgment under review is reversed.

LISA, J.A.D., dissenting.

In my view, the 1999 Ford Crown Victoria owned and used by the City of Newark as a marked police car is an "automobile" within the meaning of *N.J.S.A.* 39:6A–2a. Because Kason Cheeks was injured while occupying that vehicle, he is entitled to pursue collection of personal injury protection (PIP) benefits from New Jersey Manufacturers Insurance Company (NJM) under its policy issued to Cheeks' father, with whom Cheeks resided at the time of the accident. *N.J.S.A.* 39:6A–4. Therefore, I dissent.

PIP benefits are payable to covered individuals "who sustain bodily injury as a result of an accident while occupying ... an automobile...." *N.J.S.A.* 39:6A–4. An "automobile," for these purposes, is defined as "a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver;...." *N.J.S.A.* 39:6A–2a.

Of course a Ford Crown Victoria is a typical sedan which fits within this definition. The question here is whether because of its ownership and use by a public entity as a marked police car, or because of some modifications it may possess, it is divested of that status for PIP purposes.

Ownership by a public entity does not detract from the vehicle's status as a private passenger automobile. *Simon v. CNA Ins. Co.,* 225 *N.J.Super.* 606, 613–15, 543 *A.*2d 110 (App.Div.), *certif. denied,* 113 *N.J.* 350, 550 *A.*2d 461 (1988). We reasoned that the word "private" pertains to the type of vehicle, not its ownership, *id.* at 614, 543 *A.*2d 110, and concluded that if the Legislature intended to exclude all government-owned vehicles from the No–Fault Act's coverage, it would have expressly done so. *Id.* at 614–15, 543 *A.*2d 110. In our analysis, we relied upon our earlier holding in

*Wagner v. Transamerica Ins. Co.,* 167 *N.J.Super.* 25, 400 *A.2d* 497 (App.Div.) *certif. denied,* 81 *N.J.* 60, 404 *A.2d* 1159 (1979), that a vehicle that otherwise fits the "private passenger automobile" definition is not outside the definition because it is used for commercial purposes in an occupation or business. *Simon v. CNA Ins. Co., supra,* 225 *N.J.Super.* at 613–14, 543 *A.2d* 110.

The statutory definition excludes only those passenger type automobiles that are used as a public livery conveyance for passengers or rented with a driver. Thus, for example, taxicabs are excluded. *Truppa v. Prudential Property and Cas. Co.,* 237 *N.J.Super.* 269, 272, 567 *A.2d* 296 (Law Div.1989). So too are limousines. *Bello v. Hurley Limousines, Inc.,* 249 *N.J.Super.* 31, 37–38, 591 *A.2d* 1356 (App.Div.1991). The vehicle in *Bello* was registered as a limousine and bore omnibus livery license plates. *Id.* at 33, 591 *A.2d* 1356. It was used to transport passengers for consideration and rented with a driver. *Id.* at 33–34, 591 *A.2d* 1356. On the occasion of the accident for which PIP benefits were sought, it was being driven for personal use. We deemed that circumstance irrelevant to the vehicle's status under the "private passenger automobile" definition:

> This principle [enforcing an unambiguous statute according to its terms] applied here leaves no room for judicial interpretation. The plain language of *N.J.S.A.* 39:6A–2a clearly eliminates the Hurley motor vehicle as an automobile for purposes of the Act.... Although the Hurley motor vehicle was a private passenger type automobile, it was registered and used as a public or livery conveyance for passengers and rented to others with a driver. Its status was a limousine, not an automobile.
>
> The motor vehicle's classification as a public or livery conveyance for passengers does not change by its temporary or transitory use for some other purpose. Rather, the motor vehicle's general status controls its classification. Had the Legislature intended that the motor vehicle's use at the precise time of the accident controlled its classification, it is reasonable to conclude that the Legislature would have included language to that effect in the Act.
>
> . . .
>
> Moreover, classifying vehicles by their use at the precise time of the accident would create chaos and undermine the purposes of the Act [to insure prompt payment of benefits without the need for lengthy and costly litigation].
>
> [*Id.* at 37, 591 *A.2d* 1356.]

The majority departs from the clear and unambiguous language of the statute and relies on a non-statutory characteristic of the vehicle involved in this case to exclude it from the "private passenger automobile" definition—namely that the use of police patrol cars is inherently risky and they are modified to make them suitable for the hazards they routinely encounter. Op. at 23, 813 A.2d 1232. The majority further supports its conclusion by noting that the underlying purpose of PIP coverage (to insure prompt payment of benefits without the need for lengthy and costly litigation) is achieved by the workers' compensation benefits available to the injured police officer in this case. Op. at 23, 813 A.2d 1232.

It cannot be denied that police cars are occasionally used in high-risk situations such as high-speed pursuits. However, most of the time police cars are driven in a normal manner on public streets. Indeed, the accident in this case was a garden-variety fender bender, in which the police car proceeded through an intersection in Newark after the traffic light changed from red to green, and was rear-ended by another car.

If the Legislature intended exclusion of police cars, it could easily have expressed such intent in the definitional section. In a statute whose clarity "leaves no room for judicial interpretation," the judicial establishment of a blanket exception for police cars because they are sometimes used in high-risk situations is contrary to the *Bello* rationale and is unwarranted.

There is no dispute that the car Cheeks occupied was a marked police car. Beyond that, however, the record reveals nothing of any modifications. The majority assumes the car contains a "police package." Op. at 23, 813 A.2d at 1232. I make the same assumption for purposes of analysis. Not all marked police cars, however, are equipped with a police package. The Bulletin, National Law Enforcement and Corrections Technology Center, November 2001, cited by the majority, *ibid.*, points out that "[m]any [police] agencies are painfully aware of the consequences [of higher maintenance costs in the long run] that result from being 'penny wise and pound foolish,' where vehicles with inade-

quate performance, such as *regular production passenger vehicles* not specifically designed for police service, are selected because they cost less than police-package vehicles." (Emphasis added.) Therefore, marked police cars may or may not be equipped with a police package. Any classification of police cars based on modifications is illusory.

Typically, a police package includes performance items, such as a high horsepower engine and upgraded steering, handling and braking systems, and specialty items specific to police use, such as spot lights, a roof light bar and radio equipment. There is nothing to indicate that similar performance items are not available to the general public. Many vehicles driven by our civilian population are equipped with various sport and high performance packages. As for the specialty items, when police vehicles outlive their usefulness to the police agency, they are typically disposed of by removing appropriate specialty items and being sold as "used cars" to the members of the general public. *See, e.g., N.J.S.A.* 40A:11–36.

Such modifications, if they were made to the police car in this case, are inconsequential and do not alter the character of this Ford Crown Victoria as a passenger type automobile. These are not comparable to the drastic modifications that converted a Volkswagen Beetle to a dune buggy in *Wilno v. New Jersey Mfrs. Ins. Co.,* 180 *N.J.Super.* 146, 434 *A.*2d 605 (App.Div.1981), *rev'd on dissent,* 89 *N.J.* 252, 445 *A.*2d 713 (1982). "Among other modifications, the entire body was removed from the chassis and the frame was shortened.... [T]he dune buggy had no body—no sides, no roof and no windshield." *Id.* at 153, 434 *A.*2d 605 (Allcorn, P.J.A.D., dissenting). It also lacked such safety equipment as directional signals, bumpers and a full set of lights. *Id.* at 148–49, 434 *A.*2d 605. As such, the dune buggy was unregistered and unregisterable. It was uninsured. It was intended for use and was used for recreational off-road purposes. The accident for which PIP benefits were claimed occurred when it flipped over on an off-road dirt track in the Pinelands. *Id.* at 148, 434 *A.*2d 605.

In his dissent, adopted by a four-justice majority of the Supreme Court, Judge Allcorn noted that the ordinary and common meaning of "automobile" is a "4–wheeled automotive vehicle *designed for passenger transportation on streets and roadways* . . . ." *Id.* at 152, 434 *A.*2d 605 (Allcorn, P.J.A.D., dissenting)(emphasis added). "A dune buggy, on the other hand, patently is not a private passenger automobile designed and used solely and principally for the transportation of passengers on the public streets and highways. Concededly, it is instead a specifically designed and constructed vehicle, intended and used solely or principally for off-road recreational purposes." *Id.* at 152–53, 434 *A.*2d 605. Therefore, a dune buggy and a private passenger automobile are "two classes of vehicles [that] are mutually exclusive." *Id.* at 153, 434 *A.*2d 605.

Two judges of this court and three Supreme Court justices deemed the dune buggy to be within the private passenger automobile definition. Thus that vehicle, with its extreme modifications, which rendered it unuseable on public streets and highways, was determined only by the narrowest of margins to fall outside the boundaries of the statutory definition. The relatively minor police-package modifications do not deprive a production model sedan of its designed purpose and use solely and principally for the transportation of passengers on the public streets and highways. The sedan occupied by Cheeks and other non-police sedans on the roadways are not two mutually-exclusive classes of vehicles. They are both designed and used for passenger transportation on the public streets and highways. Any police package modifications do not cause the vehicle in this case to lose its character as a private passenger automobile.

Next, I address the interplay of PIP and workers' compensation benefits. Cheeks was injured on February 10, 2001. He promptly submitted a PIP claim to NJM, which denied the claim on March 2, 2001 because"[t]his is a Worker's Compensation matter." On April 5, 2001, NJM supplemented its denial on the additional basis that Cheeks was "not a passenger in a private passenger

vehicle." NJM again informed Cheeks that his exclusive source of recovery for medical expenses was workers' compensation. Cheeks filed a workers' compensation claim. The compensation carrier did not dispute the compensability of Cheeks' injury, but did not authorize treatment by Haveron Total Health (Haveron). At the time the cross motions of the parties were made and decided in the trial court in September and October 2001, Cheeks' workers' compensation action was pending.

PIP benefits are payable as the loss accrues, but are reduced under the collateral source rule by benefits "collectible under workers' compensation insurance." *N.J.S.A.* 39:6A–6. The PIP carrier, however, does not have the authority to unilaterally determine what is "collectible" in compensation. *Speiser v. Harleysville Ins. Co.*, 237 *N.J.Super.* 507, 510, 568 *A.2d* 543 (App.Div.), *certif. denied*, 121 *N.J.* 647, 583 *A.2d* 337 (1990); *Olivero by Olivero v. New Jersey Mfr. Ins. Co.*, 199 *N.J.Super.* 191, 198, 488 *A.2d* 1071 (App.Div.1985), *certif. denied*, 115 *N.J.* 76, 556 *A.2d* 1219 (1989); *Solimano v. Consolidated Mut. Ins. Co.*, 146 *N.J.Super.* 393, 396–97, 369 *A.2d* 1003 (Law Div.1977). That determination can only be made by the Workers' Compensation Court. *Speiser v. Harleysville Ins. Co.*, *supra*, 237 *N.J.Super.* at 510, 568 *A.2d* 543; *Olivero by Olivero v. New Jersey Mfr. Ins. Co.*, *supra*, 199 *N.J.Super.* at 198, 488 *A.2d* 1071; *Aetna Cas. & Sur. Co. v. Para Mfg. Co.*, 176 *N.J.Super.* 532, 536, 424 *A.2d* 423 (App.Div. 1980).

This is not a situation where a claimant, injured in a work-related accident, is barred from PIP recovery for medical expenses because he never sought authorization from his employer for that medical treatment, never attempted to claim the expenses in his workers' compensation action, allowed the compensation action to proceed to final judgment, and then, for the first time, presented the bills to his PIP carrier. *Wagner v. Transamerica Ins. Co.*, 167 *N.J.Super.* 25, 32–34, 400 *A.2d* 497 (App.Div.), *certif. denied*, 81 *N.J.* 60, 404 *A.2d* 1159 (1979). To allow a PIP claim under those circumstances would, in effect, allow the claimant

impermissibly to choose his source of recovery (PIP or comp) and would circumvent the statutory scheme which requires payment by the PIP carrier of reasonable and necessary medical expenses as they become due, but places the ultimate responsibility for such expenses on the compensation carrier. *Id.* at 34, 400 *A*.2d 497.

Cheeks did not withhold his PIP claim for Haveron's treatment, nor did he refrain from seeking authorization from his employer. His compensation claim was open when he demanded PIP arbitration, seeking enforcement of his PIP coverage from NJM. We do not know whether NJM disputes the necessity and reasonableness of Haveron's treatment and bill. NJM's denial is based on its asserted lack of coverage under the circumstances presented. However, if it is determined that NJM must provide PIP coverage, and it pays all or any part of the bills, either voluntarily or as a result of PIP arbitration, it is not prejudiced in its right to seek reimbursement from the compensation carrier. It has the well-established right to intervene in the pending compensation action to assert that right. *Olivero by Olivero v. New Jersey Mfr. Ins. Co., supra,* 199 *N.J.Super.* at 200, 488 *A*.2d 1071; *Aetna Cas. & Sur. Co. v. Para Mfg. Co., supra,* 176 *N.J.Super.* at 535–36, 424 *A*.2d 423.

Under the circumstances of this case there has been no attempt by the injured party to circumvent the system. We should not speculate on the potential outcome of any effort NJM may make to recover from the compensation carrier, in the compensation proceeding, any medical expense PIP benefits it may pay. *Speiser v. Harleysville Ins. Co., supra,* 237 *N.J.Super.* at 511, 568 *A*.2d 543. That is not now before us. *Ibid.*

Finally, I address the public policy issue implicated by this case. The public policy underlying the No Fault Act has been clearly stated:

Moreover, *the Act itself requires us to construe its provisions liberally in order to effect the legislative purpose to the fullest extent possible. N.J.S.A.* 39:6A–16. The No Fault Act is social legislation intended to provide insureds with the prompt payment of medical bills, lost wages and other such expenses without making them await the outcome of protracted litigation. Mandated as a social necessity, *PIP*

*coverage should be given the broadest application consistent with the statutory language.*

[*Amiano v. Ohio Cas. Ins. Co.,* 85 *N.J.* 85, 90, 424 *A.*2d 1179 (1981)(emphasis added).]

Citing *Rybeck v. Rybeck,* 141 *N.J.Super.* 481, 504, 358 *A.*2d 828 (Law Div.1976) *app. dism.,* 150 *N.J.Super.* 151, 375 *A.*2d 269 (App.Div.1977), the Court noted that the Act contains anomalies resulting from " 'vehicle-oriented classifications' utilized by the Legislature." *Amiano v. Ohio Cas. Ins. Co., supra,* 85 *N.J.* at 90–91, 424 *A.*2d 1179. In making such classifications, for example, the Legislature excluded motorcycles because available information showed a higher risk of injuries which would push up no-fault premiums. *Rybeck v. Rybeck, supra,* 141 *N.J.Super.* at 503, 358 *A.*2d 828. While the same argument could be made for police cars, there is no indication that the Legislature possessed information demonstrating a higher injury rate for police car occupants. More significantly, the Legislature chose not to create an exclusion for police cars.

Likewise, the Legislature excluded trucks and other commercial vehicles because their occupants are normally covered by workers' compensation. *Ibid.* This is so with respect to government-owned automobiles, such as that operated in *Simon,* but the Legislature did not exclude such vehicles. Taxis, buses and livery vehicles were excluded because their drivers typically are covered by workers' compensation and for the additional reason that providing PIP coverage for their passengers would push up no-fault premiums. *Id.* at 503–504. The Legislature could have applied this rationale to police cars because the drivers are typically covered by workers' compensation and they often carry civilian passengers. *See, e.g., Christy v. City of Newark,* 102 *N.J.* 598, 603, 510 *A.*2d 22 (1986), noting that civilian passengers are frequently carried by police cars in emergency situations. Again, however, the Legislature chose not to exclude police cars.

The vehicle-oriented classifications that the Legislature has established have been approved by the Court as "a reasonable way for the Legislature to approach the subject." *Amiano v. Ohio*

*Cas. Ins. Co., supra,* 85 *N.J.* at 91, 424 *A.*2d 1179. Thus it is permissible, for example, that the statutory definition provides PIP coverage for a pedestrian if struck by a family sedan but not if struck by a taxi. Creating such vehicle-oriented classifications is the prerogative of the Legislature. However, in our liberal construction of the definition, directed at the goal of effecting the broadest application the statutory language will allow, our interpretation should be expansive, not restrictive. We should not create an anomaly to exclude coverage which the Legislature has chosen to omit.

I would affirm.