840 A.2d 231

NEW JERSEY MANUFACTURERS INSURANCE COMPANY, PLAINTIFF–RESPONDENT, v. BERNIE J. HARDY, KASON CHEEKS AND HAVERON TOTAL HEALTH, P.A., DEFENDANTS–APPELLANTS.

Argued October 20, 2003—Decided January 27, 2004.

*Douglass D. Burgess* argued the cause for appellants (*Cary & Icaza,* attorneys; *Robert R. Cary,* on the brief).

*Robert F. Cox* argued the cause for respondent (*McCreedy and Cox,* attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

This appeal is from an insurance-coverage declaratory judgment action. We must address whether an individual is entitled to claim Personal Injury Protection (PIP) coverage pursuant to *N.J.S.A.* 39:6A–1 to –35 (No Fault Act) under a personal automobile insurance policy when the precipitating accident occurred during work and involved the employer's motor vehicle. The defendant-claimant, Kayson Cheeks, was serving as a police officer in the City of Newark when he was injured while on patrol in a police cruiser. A divided Appellate Division panel determined that a specially equipped police car is not a "private passenger automobile" within the meaning of the No Fault Act's definition of "automobile" and held, therefore, that Cheeks was not entitled to PIP coverage. *N.J. Mfrs. Ins. Co. v. Hardy*, 357 *N.J.Super.* 19, 21–24, 813 *A.*2d 1230 (2003). This appeal is before us as of right as a result of the dissent by Judge Lisa. *R.* 2:2–1(a)(2). We reverse.

I.

Plaintiff New Jersey Manufacturers Insurance Co. (NJM) sold a Standard Personal Auto Policy (Policy) to defendant Bernie J. Hardy, Cheeks's father. On February 10, 2001, while on patrol in a police cruiser, Cheeks's vehicle was struck from the rear by another vehicle and he sustained bodily injuries. At the time of the accident, Cheeks lived with his father, and was insured under the Policy as a resident relative.

Defendant Haveron Total Health, P.A., treated Cheeks for his injuries. He submitted a claim for workers' compensation benefits and also sought PIP coverage under the Policy. NJM denied the claim on the basis that Cheeks's accident did not occur while he was a passenger in a "private passenger automobile." NJM also asserted that Cheeks's workers' compensation provider was responsible for this work-related automobile accident, not NJM as his PIP carrier. Haveron accepted assignment of Cheeks's claim

and promptly sought arbitration under the Policy. NJM filed this declaratory judgment action in response.

Following the parties' submission of cross-motions for summary judgment, the motion court granted judgment to defendants. The court held that Cheeks was entitled to PIP coverage because, consistent with the definition found in *N.J.S.A.* 39:6A–2a, the police car was "a private vehicle" that "was not being used as a public or livery conveyance for passengers or [being] rent[ed] to others with a driver." In a subsequently issued written opinion, the court expanded on its oral decision, citing *Simon v. CNA Insurance Co.*, 225 *N.J.Super.* 606, 543 *A.*2d 110 (App.Div.), *certif. denied*, 113 *N.J.* 350, 550 *A.*2d 461 (1988), to support its holding that a vehicle owned by a governmental entity can be "private" for purposes of entitlement to PIP benefits under the No Fault Act. The court also stated that the availability of workers' compensation does not preclude PIP coverage.

A divided Appellate Division panel reversed. *Hardy, supra,* 357 *N.J.Super.* 19, 813 *A.*2d 1230. The majority found no controlling case law on the question whether a police car is a "private passenger automobile," and held that it was not, because police cars are modified for "the hazards they routinely encounter." *Id.* at 23, 813 *A.*2d 1230. Noting that Cheeks may seek his costs through workers' compensation, the majority added that Cheeks should not be permitted "to transfer the cost of his work-related injuries to [NJM and,] thus, entirely circumvent[ ] the statutory forum [of workers' compensation] available to him." *Id.* at 23–24, 813 *A.*2d 1230.

The dissent, on the other hand, construed the No Fault Act as excluding from PIP coverage only automobiles used for public livery or rented with a driver, and observed that police cars met neither of those statutory exceptions. *Id.* at 25, 813 *A.*2d 1230 (Lisa, J.A.D., dissenting). Judge Lisa cited examples of cases that had allowed PIP coverage for accidents involving government-owned automobiles or automobiles used for business purposes when those vehicles did not fall within the specifically excluded

use categories of *N.J.S.A.* 39:6A–2a. *Id.* at 24–25, 813 *A*.2d 1230. He found that a "vehicle modification" exception was not supported by the language of the statute or in logic and disagreed with the majority's contention that Cheeks was circumventing the workers' compensation system, noting that NJM may seek contribution from Cheeks's workers' compensation provider. *Id.* at 28–30, 813 *A*.2d 1230.

## II.

The present dispute concerning construction of the term "automobile" arises in the context of our statutory and regulatory system of mandatory automobile insurance. In New Jersey, every owner or registered owner of an automobile registered or principally garaged in New Jersey must maintain either a standard or basic automobile liability insurance policy with certain minimum limits of coverage insuring against bodily injury, death, or property damage sustained by any person "arising out of the ownership, maintenance, use or operation of an automobile." *N.J.S.A.* 39:6A–3, –3.1, and –4; *N.J.S.A.* 39:6B–1. A standard insurance policy also must provide PIP coverage for persons sustaining bodily injury as a result of an automobile accident or caused by an automobile. *N.J.S.A.* 39:6A–1.[1] In addition to liability and PIP coverage, standard automobile liability insurance policies must provide optional uninsured motorist (UM) and underinsured motorist (UIM) coverage. *N.J.S.A.* 17:28–1.1. Those coverage requirements—liability, PIP, and optional UM and UIM—are triggered by the place where the automobile is registered or principally garaged rather than by the identity of the policyholder. *N.J.S.A.* 17:28–1.1; *N.J.S.A.* 39:6A–3; *N.J.S.A.* 39:6B–1a; *see also Ross v. Transport of N.J.*, 114 *N.J.* 132, 139, 553 *A*.2d 12 (1989).

---

[1] Because this appeal does not implicate a basic policy of insurance, further reference to that statutory alternative is unnecessary.

PIP coverage is no-fault insurance in that it reimburses persons injured in automobile accidents without regard to fault for, among other things, medical expenses incurred and wage loss sustained as a result of such accidents. *N.J.S.A.* 39:6A–1.1; see *Palisades Safety & Ins. v. Bastien,* 175 *N.J.* 144, 147–48, 814 *A.*2d 619 (2003). The No Fault Act requires that automobile liability policies include PIP

> for the payment of benefits without regard to negligence, liability or fault of any kind, [1] to the named insured and members of his family residing in his household who sustain bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile, [2] to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with permission of the named insured, and [3] to pedestrians sustaining bodily injury caused by the named insured's automobile or struck by an automobile or struck by an object propelled by or from that automobile.
>
> [*N.J.S.A.* 39:6A–4.]

The coverage thus applies to three categories of injured persons: (1) a named insured and resident relatives of that named insured injured in an accident involving any automobile; (2) other persons sustaining injuries in incidents involving an automobile of a named insured, who are permissive occupants or users of a named insured's automobile; and (3) pedestrians injured by an automobile of a named insured. *Ibid.* Stated differently, PIP coverage (a) follows a named insured and additional insureds, and (b) follows the automobile of a named insured. *Ibid.*

As we have noted on past occasions, and as the statute itself requires, the No Fault Act is given liberal construction in favor of its intended remedial purpose of effecting broad protection for accident victims. *See, e.g., Palisades, supra,* 175 *N.J.* at 148, 814 *A.*2d 619; *Amiano v. Ohio Cas. Ins. Co.,* 85 *N.J.* 85, 90, 424 *A.*2d 1179 (1981); *N.J.S.A.* 39:6A–16. Medical expenses must be paid "for reasonable, necessary, and appropriate treatment ... in an amount not to exceed $250,000 per person per accident...." *N.J.S.A.* 39:6A–4a. Although an insurance company must pay all such PIP medical expense benefits, the Unsatisfied Claim and Judgment Fund (UCJF) is available to reimburse an insurer for any amount paid in excess of $75,000. *Ibid.* Importantly, in

addition to payment of medical expenses, an insurer must provide additional PIP coverage as follows:

1. Income continuation benefits of $100 per week up to a limit of $5,200, pursuant to *N.J.S.A.* 39:6A–4b;

2. Essential services benefits for reimbursement of services the insured person did provide but can no longer, because of an injury sustained in the automobile incident (*e.g.,* grocery shopping, cleaning) up to a limit of $12 per day and $4,348 in the aggregate, pursuant to *N.J.S.A.* 39:6A–4c;

3. Death benefits, up to the limits of *N.J.S.A.* 39:6A–4b, to be paid to the decedent's spouse or children or estate if the deceased was an income producer, pursuant to *N.J.S.A.* 39:6A–4d; and

4. Funeral expense benefits up to $1,000, pursuant to *N.J.S.A.* 39:6A–4e.

## III.

The No Fault Act defines "automobile" as:

[1] a private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and [2] a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or a camper type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the insured other than farming or ranching.

[*N.J.S.A.* 39:6A–2a.]

The narrow question presented by this case is whether a police cruiser fits within that definition for purposes of Cheeks's entitlement to PIP coverage under his own policy of insurance. In answering that question, we must construe the language of the definition in a manner that sensibly applies the No Fault Act and fulfills its policy objectives. See *Cesare v. Cesare*, 154 *N.J.* 394, 405, 713 *A.*2d 390 (1998) (noting "central principle of statutory construction dictates that statutes are to be read sensibly," to "permit reason and purpose" of legislation to control).

## A.

According to Cheeks, he should not be ineligible for PIP coverage under his personal automobile insurance policy because he was operating a police cruiser in the course of his employment at the time of his accident. NJM, however, argues that by use of the term private passenger automobile, the Legislature meant to distinguish a non-private vehicle, such as a governmental vehicle, from a privately owned vehicle for purposes of determining eligibility for PIP coverage. In our view, NJM mistakes the meaning of the word "private" in "private passenger automobile" and, as a result, reaches a conclusion that is at odds with the overall purpose of the No Fault Act.

Nothing about the operation of our no-fault system of insurance coverage suggests that an accident victim's access to his or her own first-person PIP insurance coverage is premised on whether the "automobile" involved in the accident is owned by a governmental entity or a private person. Rather, the statute refers to a "type" of vehicle, and then excludes specific vehicles based on their use. The first clause of *N.J.S.A.* 39:6A-2a uses the insurance rating classification term "private passenger automobile" and includes two *types* of that classification: "private passenger" or "station wagon" "type" automobiles. The definition then exempts certain private-passenger-type and station-wagon-type automobiles based on their specific use: those that are *used* "as a public livery or conveyance for passengers" or "rented to others with a driver" are excepted from the definition. The second clause of the definition addresses the broader category of "motor vehicle[s]." It establishes that certain identified types of motor vehicles are considered automobiles for the purpose of the No Fault Act provided that they are not *used* for business purposes. Again, the statute begins with a "type" of vehicle and then exempts some vehicles based on specific uses.

That same understanding of the statutory language can be found in *Simon, supra,* 225 *N.J.Super.* at 613, 543 *A.2d* 110, wherein the trial court rejected an insurance company's argument that a government-owned automobile was not a *"private* passenger

automobile" within the meaning of *N.J.S.A.* 39:6A–2a. The trial court reasoned that "the private passenger distinction goes to the use of the vehicle and not the ownership of the vehicle," *ibid.*, and the Appellate Division agreed, concluding that "there is no indication that the Legislature used the term 'private' automobile in *N.J.S.A.* 39:6A–2a as being the opposite to government ownership of an automobile. *If the Legislature had intended to exclude all government-owned vehicles from the No–Fault Act's coverage, it would have expressed that intent."* *Id.* at 614–15, 543 *A.*2d 110 (emphasis added). Similarly, numerous New Jersey Department of Banking and Insurance regulations employ the rating classification term "private passenger automobile" and distinguish government- and entity-owned vehicles from individually- or personally-owned vehicles by using the word "personal" as an additional modifier. *See, e.g., N.J.A.C.* 11:3–2.2 (defining *"personal* private passenger automobile" as a private passenger automobile *"owned* individually, or jointly by individuals who are residents of the same household, and used for personal, family or household needs") (emphasis added); *N.J.A.C.* 11:3–44.2 (using same definition in regulations designed to implement *N.J.S.A.* 17:29A–46.1 by establishing standards to rate policies properly and adequately).

We find that the Legislature used the term "private passenger automobile" as a term of art to distinguish such vehicles from "public" passenger automobiles (such as taxicabs), and from private "freight" automobiles (such as trucks). See *Poncino v. Sierra Nevada Life & Cas. Co.,* 104 *Cal.App.* 671, 286 *P.* 729, 730–31 (1930) (observing that historic distinction between "freight" and "passenger" automobiles appears to have originated with use of similar differentiating terms for railroad cars and elevators). We note that our understanding of the meaning of "automobile" in *N.J.S.A.* 39:6A–2a, which focuses first on the type of vehicle and then examines its use, has been applied consistently in decisions that pre-date and post-date *Simon.* See *Giordano v. Allstate Ins. Co.,* 260 *N.J.Super.* 329, 330–33, 616 *A.*2d 936 (App.Div.1992) (holding that minivan used as demonstration vehicle and equipped for transporting up to seven passengers was "private passenger

automobile," and not a cargo-transporting van); *Wagner v. Trans-america Ins. Co.*, 167 *N.J.Super.* 25, 30–34, 400 *A.*2d 497 (App. Div.) (holding that car used by dealership salesman as demonstration vehicle was "automobile" for purposes of PIP coverage under personal insurance policy because of vehicle's type, not its use in commercial or business activities), *certif. denied*, 81 *N.J.* 60, 404 *A.*2d 1159 (1979). In our view, that longstanding construction gives meaning to all of the words employed in the statute and furthers the legislative intent to achieve broad protection of accident victims.

### B.

We add, for completeness, that examination of the Motor Vehicles Security–Responsibility Law, *N.J.S.A.* 39:6–23 to –91 (Act), reinforces our holding in this case. That Act establishes guidelines by which individuals or entities having motor vehicle fleets of twenty-five or more vehicles may self-insure with the approval of regulators. *Ibid.* Importantly, the statutory scheme contains a carve-out applicable to governmental entities, exempting them from submission to a regulatory review and approval process otherwise imposed as a condition of being a lawful self-insurer. *N.J.S.A.* 39:6–54 provides:

> a. This act shall not apply with respect to any motor vehicle owned by the United States, this State or any political subdivision of this State or any municipality therein; nor with respect to any motor vehicle which is subject to the requirements of law requiring insurance or other security on certain types of vehicles, *other than* the requirements of P.L.1972, c. 70 (C. 39:6A–1 et seq.) [the No Fault Act] or P.L.1972, c. 197 (C. 39:6B–1 et seq.) ["the Compulsory Motor Vehicle Insurance Act"].

> [ (Emphasis added).]

*N.J.S.A.* 39:6–54a excepts governmental entities from the regulatory requirements for "self-insurance" status, allowing such entities to "go bare." See *Ross, supra*, 114 *N.J.* at 139, 553 *A.*2d 12 (holding that government entity was not required to purchase

insurance or to self-insure).[2]  Importantly, however, *N.J.S.A.* 39:6–54a itself does not create an exemption from the requirements of the No Fault Act or the Compulsory Motor Vehicle Insurance Act.

    █  Government ownership of a vehicle involved in an accident does not prevent a victim from pursuing No Fault or other compulsory insurance protections, including UM protection, from various sources.  See *Ross, supra,* 114 *N.J.* at 146–47, 553 *A.2d* 12 (recognizing various means by which UM coverage may be available to victims of automobile accidents involving governmental vehicles, such as (1) a policy of insurance procured by the governmental entity;  (2) self-insurance coverage;  or (3) the UCJF).[3] See also *Christy v. Newark,* 102 *N.J.* 598, 605–12, 510 *A.2d* 22 (1986), in which we held that a Newark police officer, injured by a hit-and-run driver while operating a police car in the course of his duties, was entitled to UM coverage.  We noted in *Christy* that the Appellate Division had rejected an argument, identical to the one now made, that a police car is not an "automobile" under *N.J.S.A.* 39:6A–2a, *id.* at 604, 510 *A.2d* 22, and accepted that court's determination "that the inclusion of the word 'private' in the definition was for the purpose of distinguishing normal passenger-type cars from those used 'as a public livery or conveyance of passengers' or 'rented to others with a driver.' "  *Ibid.*  The issue that is before us in the present appeal was not squarely before us in *Christy, id.* at 605, 510 *A.2d* 22;  however, our holding today

---

[2] In *Ross,* NJM participated as *amicus curiae,* and apparently argued that, under the then revised (now current) version of *N.J.S.A.* 39:6–54, public entities must purchase compulsory insurance.  *Ross, supra,* 114 *N.J.* at 141 n. 6, 553 *A.2d* 12.

[3] A public entity may purchase insurance under a commercial policy.  Commercial policies provide for PIP benefits where the law mandates such coverage. *See generally N.J.S.A.* 39:6A–4 (referencing "named insured," which term includes business organizations as well as natural persons); *N.J.A.C.* 11:3–4.4(f) (requiring provision of PIP medical benefits of $250,000, consistent with N.J.S.A. 39:6B–4a, in commercial automobile insurance policies purchased for non-natural-person, named insureds).

follows the Appellate Division's understanding of the term "automobile" in that matter. *See also Wagner, supra,* 167 *N.J.Super.* at 32, 400 *A.*2d 497 (perceiving no "total personal/commercial dichotomy for coverage purposes" and declining to superimpose such limiting design on statute governing PIP coverage).

We perceive no express or implied public policy that would support a *per se* exclusion from PIP coverage for victims of accidents that involve government-owned automobiles. Indeed, it would be inequitable to deprive an entire class of worker, employees of State and local government, from access to mandatory PIP coverage available through their own personal automobile insurance policy. Accordingly, we conclude that first-party PIP coverage is available to an employee who is injured while driving a government-owned automobile of a private passenger type.

We add that we are unpersuaded that a specially equipped police cruiser is no longer an automobile by virtue of its modifications. Countless automobiles have modifications. The modifications identified by the Appellate Division majority—a larger engine, better steering, better handling—can be found in many sports cars covered by PIP. *But cf. Wilno v. N.J. Mfrs. Ins. Co.,* 180 *N.J.Super.* 146, 148–49, 153–54, 434 *A.*2d 605 (App.Div.1981), *rev'd on dissent,* 89 *N.J.* 252, 445 *A.*2d 713 (1982), (noting obvious off-road use of modified vehicle, which had no body[,] no sides, no roof and no windshield, and that lacked required safety equipment [such] as directional signals, bumpers and a full set of lights). Moreover, as explained by Judge Lisa, a PIP exclusion for police cruisers based on a vehicle modification theory is not consistent with the statutory exclusions crafted by the Legislature in *N.J.S.A.* 39:6A–2a.

## IV.

■ NJM also argues that the availability of workers' compensation to Cheeks should preclude PIP coverage under the Policy. However, the Legislature included a collateral source provision in the No Fault Act. See *N.J.S.A.* 39:6A–6 (referencing workers'

compensation benefits specifically); *see, e.g., Olivero v. N.J. Mfrs. Ins. Co.*, 199 *N.J.Super.* 191, 200–01, 488 *A.*2d 1071 (App.Div.1985) (holding that availability of workers' compensation benefits to injured person does not preclude injured person from seeking PIP benefits). Clearly, a PIP carrier may seek reimbursement from the workers' compensation provider, *N.J.S.A.* 39:6A–6, and even may be the initiator of a workers' compensation proceeding if the injured person has not filed for such benefits. See *Speiser v. Harleysville Ins. Co.*, 237 *N.J.Super.* 507, 511, 568 *A.*2d 543 (App.Div.), *certif. denied,* 121 *N.J.* 647, 583 *A.*2d 337 (1990). The availability of workers' compensation does not preclude an insured (or his assignee) from seeking the range of remedies available pursuant to PIP. See *N.J.S.A.* 39:6A–4b to –4e.

## V.

The judgment of the Appellate Division is reversed substantially for the reasons expressed in Judge Lisa's thorough and persuasive dissenting opinion, and as expanded upon herein.

*For reversal*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed*—None.